**AT&T WIRELESS SERVICES OF FLORIDA, INC., d/b/a AT&T Wireless Services, Plaintiff,**

v.

**ORANGE COUNTY, A Political Subdivision of the State of Florida, Defendant.**

**No. 96–1325–CIV–ORL–3ABF(18).**

United States District Court, M.D. Florida, Orlando Division.

Dec. 16, 1997.

---

Darryl M. Bloodworth, Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, FL, David S. Oliver, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Orlando, FL, for plaintiff.

Paul Henry Chipok, Orange County Attorney's Office, A. Bryant Applegate, Linda Sue Brehmer Lanosa, Orange County Attorney's Office, Litigation Unit, Orlando, FL, for defendants.

## OPINION AND ORDER

BAKER, United States Magistrate Judge.

This cause comes before the Court for final decision[1] upon the record established in proceedings before Orange County, as supplemented pursuant to prior Order of this Court (Doc. No. 78). The parties have extensively briefed the issues, and the Court heard oral argument on the previous record. Plaintiff, AT & T Wireless Services of Florida, Inc. (herein "AT & T"), seeks injunctive relief under Section 704 of the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332(c)(7)(B), against the Orange County Board of County Commissioners ("the Board"), following the Board's denial of AT & T's application for a special exception and variance to obtain a building permit to erect a 99 foot communications tower in a residential area in unincorporated Orange County. At issue is whether the Board's decision should be upheld under state land use law and whether the denial violates the Act and warrants injunctive or other relief. For the reasons set forth herein, the Court finds that the denial comports with Florida law and does not violate the Act. Judgment is accordingly ordered in favor of Defendant Orange County.

### Background

In the prior Order, this Court set forth the background of this case, as follows:

1. Pursuant to 28 U.S.C. § 636, the parties consented to consideration and disposition of the case by the United States Magistrate Judge.

2. Orange County's Communication Tower Ordinance § 38–1427(d)(2) requires a separation dis-

On July 17, 1996, AT & T applied to the Board of Zoning Adjustment (the "BZA") for a special exception and a variance to construct a 135-foot steeple with concealed cellular antenna and equipment station on the property of a church in a residential neighborhood of Orange County. Due to the height of the proposed tower, and its proximity to single family homes, a special exception and variance were necessary, as the proposed tower did not meet the setback and height requirements of the Orange County Code (herein "the Code").[2] A public hearing was held before the BZA on September 5, 1996, at which AT & T presented written evidence of its need for an antenna in the Corrine Drive area. The BZA continued the hearing, and requested that AT & T hold a community meeting to allow residents to voice their concerns and provide input on the proposal.

AT & T held two community meetings, and subsequently redesigned the proposed tower by reducing it in height, footprint and overall mass. AT & T submitted the redesigned plans to the BZA at the second BZA hearing, on October 3, 1996. The BZA unanimously denied AT & T's application, stating:

DECISION: Denied the Special Exception request in that the [BZA] finds it does not met [sic] the requirements governing Special Exceptions as spelled out in Orange County Code, Section 30–43(d), and Denied the Variance request in that there was no unnecessary hardship shown on the land; and further, it did not meet the requirements governing Variances as spelled out in Orange County Code, Section 30–43(3)(g). (unanimous)

AT & T appealed to the Board. Prior to the hearing on the appeal, AT & T held a third community meeting, and agreed to install a landscape buffer to shield the neighbors' view of the steeple. On November 12, 1996, the Board heard the appeal of the BZA denial of the application for special exception and variance. AT & T presented the Board

tance of 200 feet or 300% height of tower, whichever is greater. It is undisputed that the actual separation from the nearest off-site use (a residence) is 150 feet.

with substantial written evidence regarding the need for a tower in that particular area, detailed in a diagram of AT & T's search ring. In addition to unincorporated Orange County, the area in question includes parts of the City of Winter Park, a public school under the jurisdiction of the School Board, and parts of the City of Orlando (including the United States Army Reserve Center and other property owned by the federal government which until recently served as the United States Naval Training Center [3]).

On November 20, 1996, the Board issued its decision on the appeal, reading in its entirety:

> On November 12, 1996, the Board of County Commissioners heard an appeal filed by Patrick B. King of the October 3, 1996 decision of AT & T Wireless Services and Corrine Drive Baptist Church, Item 22, on property which is generally located at 3201 Corrine Drive, District 5, Orange County, Florida.
>
> Upon a motion by Commissioner Donegan, seconded by Commissioner Freeman, and carried with all present members voting aye by voice vote; Commissioners Johnson and Hoenstine were absent; the Board upheld the decision of the Orange County Board of Zoning Adjustment and denied the request by AT & T Wireless Services and Corrine Drive Baptist Church for a special exception in a single-family dwelling district (R–1AA) to erect a church steeple 135 feet in height with an internally concealed (camouflaged) communications tower (monopole) 127 feet in height; and a variance to erect a concealed (camouflaged) communications tower 150 feet from a single-family residence in lieu of 381 feet; on the above-described property.

This action challenging the denial promptly followed. By previous Order (Doc. No. 78), this Court found that the Board violated the procedural requirements of the Act by failing to set forth written findings of fact, based on substantial evidence contained in a written record, supporting its decision. The Court gave the Board 35 days to provide a written decision, since filed (Doc. No. 79), and allowed subsequent briefing, addressed to the merits (Doc. No. 83; Doc. No. 84). The matter is now ripe for final decision on the merits of AT & T's petition.

## Analysis

### The Telecommunications Act of 1996

The Act provides, in pertinent part:

**(7) Preservation of local zoning authority**

**(A) General Authority**

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government ... over decisions regarding the placement, construction, and modification of personal wireless service facilities.

**(B) Limitations**

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government ...

 (I) shall not unreasonably discriminate among providers of functionally equivalent services; and

 (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

. . .

(iii) Any decision by a State or local government ... to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B).

AT & T contends that the Board's decision violates the Act in that it is not supported by substantial evidence. Orange County disagrees.

### Orange County Code

Orange County enacted a Communications Tower Ordinance, codified in Section 38–1427 of the Code, finding its promulgation:

> warranted and necessary:

---

**3.** The Court takes judicial notice that the Naval Training Center property is in a transition phase, following the decision to close the Center as a military facility.

(1) To direct the location of communication towers in unincorporated Orange County;

(2) To protect residential areas and land uses from potential adverse impacts of communication towers;

(3) To minimize adverse visual impacts of communication towers through careful design, siting, landscape screening and innovative camouflaging techniques;

(4) To accommodate the growing need for communication towers;

(5) To promote and encourage shared use/colocation of existing and new communication towers as a primary option rather than construction of additional single-use towers;

(6) To consider the public health and safety of communication towers;

(7) To avoid potential damage to adjacent properties from tower failure through engineering and careful siting of tower structures.

**Section 38–1427(a).**

The Communications Tower Ordinance sets forth standards such as setback requirements, separation distances between communication towers and from off-site uses/designated areas, requirements as to illumination, color, design, signage, fencing and landscaping. Section 38–1427(e) requires variance approval from the BZA to deviate from any of the standards and requirements. Section 30–43(3) of the Code requires, among other things, that the applicant show unnecessary hardship before a variance is recommended.

The Code also provides that a special exception is necessary to place a tower in a residential area, and lists certain criteria. As stated by AT & T: "The Proposed Tower: 1) cannot be injurious to the public health, safety or welfare, 2) should protect the character of surrounding property, 3) should maintain the stability of the neighborhood, 4) should confer a public benefit, 5) should meet a present need, and 6) should be appropriately screened from surrounding uses." (Doc. No. 69, p. 19 *citing* Orange County Code § 38–79(61)). Additionally, there must be a showing that alternative locations do not exist. *Id.*

**The Board's Revised Final Decision**

The Board's written findings of fact, issued pursuant to this Court's Order is appended to this opinion. In sum, the Board found, with citations to the administrative record, as follows. The proposed tower does not meet the applicable setback requirements. The proposed tower is too tall and massive to be compatible with the neighborhood. AT & T failed to demonstrate the absence of other more suitable sites or alternatives to meet its claimed service needs. The Board accordingly concluded that the criteria for a variance and special exception had not been met and denied AT & T's application.

**Standard of Review**

■ AT & T makes no contention that the County's action in this case amounts to an impermissible prohibition of personal wireless services under the Telecommunications Act. Because that Act preserves "the authority of ... local government ... over the placement ... of personal wireless facilities," the issue becomes whether the Board's decision is sustainable under state law with the extra procedural requirements of the Telecommunications Act. This Court must determine whether the Board's decision to deny the request for a special exception and a variance under applicable state and local law was supported by "substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The Telecommunications Act creates federal court jurisdiction to review local land use decision and requires local decision makers to articulate and support the grounds for their decisions. Beyond requiring a record with substantial evidence, however, the Act does not affect or encroach upon the substantive standards to be applied under established principles of state and local law.

■ The requirement of "substantial evidence" allows a reviewing court to evaluate the reasoning behind an agency decision. It does not change the substantive rules applicable to the decision. As this Court said in *OPM–USA–Inc. v. Board of County Commissioners of Brevard County*, Case No. 97–408–Civ–Orl–19, *Order dated June 26, 1997* (Doc. No. 70):

"The phrase 'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions." H.R. Conf. No. 104–458, 104th Congress, 2d Sess. 208 (1996). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *BellSouth Mobility Inc. v. Gwinnett County, Georgia,* 944 F.Supp. 923, 928 (N.D.Ga.1996) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Continuing, the Court in *BellSouth Mobility* stated:

> Although the court is not free to substitute its judgment for that of the board of commissioners, it must overturn the board's decision under the substantial evidence test if it "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

*Id. (quoting Bickerstaff Clay Products Co., Inc. v. NLRB,* 871 F.2d 980, 984 (11th Cir. 1989)).

**Variances and Special Exceptions under State and Local Law**

Under the provisions of the Code, both a variance and a special exception are required for the proposed tower to be entitled to a construction permit.

■ *Variance*—Under established Florida land use law, the right of a landowner to obtain a variance is limited. Zoning or other land use ordinances often recognize that literal compliance with all requirements is not always possible or reasonable. They may therefore prescribe standards for allowing deviation from strict application of the requirements. As a rule, variances are available to relieve "unnecessary hardship" arising from circumstances peculiar to a particular parcel. The grounds for seeking a variance are ordinarily expressed in the local ordinance or zoning code.

Orange County's Code is consistent with these general principles. Section 30–43(3) of the Code provides that the BZA has the power to recommend to the Board "such variance from the zoning ordinance as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of the zoning ordinances would result in unnecessary hardship." The Code lists several criteria to determine whether this standard is met, among them:

1) a written application must be made demonstrating that special circumstances exist that are peculiar to the land, structure, building involved and which are not applicable to other lands, structures or buildings in the same district;

2) the BZA must find that literal interpretation would deprive the applicant of rights commonly enjoyed by other properties in the same district;

3) the special conditions do not result from the applicant's actions;

4) granting the variance will not confer any special privilege on the applicant that it denied by the zoning ordinance to other lands; and

5) the BZA must make a finding that the granting of the variance "shall be in harmony with the general purpose and intent of the zoning ordinance, will not be injurious to the neighborhood, or otherwise detrimental to the public welfare."

Section 30–43(3)(i).

■ *Special Exceptions*—Special exceptions are possible uses of property not generally authorized by a particular zoning classification. To be entitled to a special exception, a land use applicant must show that the proposed use is recognized as potentially appropriate under the zoning classification, that the criteria for the exception would be met, and that the public interest would not be adversely affected.

The Orange County Code, including the Tower Ordinance, allows special exceptions if specified criteria are met:

**Sec. 38–78. Special exception criteria.**

> Subject to section 38–43, in reviewing any request for a special exception, the following criteria shall be met:

(1) The use shall be similar in noise, vibration, dust, odor, glare, and heat producing characteristics that are associated with the majority of uses currently permitted in the zoning district.

(2) The use shall meet the performance standards of the district in which the use is permitted.

(3) Landscape buffer yards shall be in accordance with section 24–5 of the Orange County Code. Buffer yard types shall track the district in which the use is permitted.

(4) The use shall be similar and compatible with the surrounding area.

(5) The use shall be consistent with the pattern of existing development.

(6) the use shall not act as a detrimental intrusion into an existing residential area.

### Conclusions of Law

Applying these standards to the record before the Court, this Court concludes that the Board's decision to deny a special exception and variance to AT & T to allow construction of this tower is supported by substantial evidence.

### Variance

■ With respect to the request for a variance, the issue is whether reducing the setback requirement is:

2) necessary to avoid a hardship peculiar to this property;

3) compatible with the neighborhood; and

4) consistent with the general purposes of the Tower Ordinance.

The Board determined that these criteria had not been met. In arguing to the contrary, AT & T focuses primarily on the technical needs of its cellular service system and fails to address traditional land use issues in detail.

*Hardship*—AT & T does not challenge the Communications Tower Ordinance, *per se*, or any other part of the Code itself. Rather, AT & T argues that its desire to have a tower of useful height within its designated search ring is a hardship sufficient to justify a variance.

The substantial setback requirement undoubtedly makes it difficult to locate a cellular tower in developed residential areas of the County without getting a variance. However, because the grounds for a variance look principally to the effect of building restrictions on a particular piece of property, the generalized need for a cellular service area does not fit well into traditional variance analysis. It is self evident in this case that the church property is not peculiarly inconvenienced by the inability to build a taller steeple housing a cellular antenna.

Implicit in AT & T's argument is the notion that cellular facilities are entitled to variance consideration on a non-traditional standard, based on demonstrated need for added capacity in a given area. However, so long as a local authority has not acted to ban cellular service, the Telecommunications Act does not change the substantive land use controls enforceable by local governments. The hardship described by AT & T in meeting its service levels (no matter how well documented) is simply not the kind of hardship traditionally recognized as grounds for a variance. Impairment of a particular proposed activity is not a unique hardship to the property.

■ The Act does not preempt local control of the placement of communications towers. The legislative history illuminates the Act's language:

The conference agreement creates a new section 704 which prevents [Federal Communications] Commission preemption of local and State land use decisions and preserves the authority of State and local governments over zoning and land use matters except in the limited circumstances set forth in the conference agreement . . . . The intent of the conferees is to insure that a State or local government does not in making a decision regarding the placement, construction and modification of facilities of personal wireless services described in this section unreasonably favor one competitor over another. The conferees also intend that the phrase "unreasonably discriminate among providers of functionally equivalent services" will provide localities with the flexibility to

treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services. For example, the conferees do not intend that if a State or local government grants a permit in a commercial district, it must also grant a permit for a competitor's 50 foot tower in a residential district.

H.R. Conf. Rep. No. 104–458, 104th Cong., 2d Sess. 208 (1996), 1996 U.S.C.C.A.N. 124, 221–222.

Thus, the Court disagrees with AT & T's argument that it is entitled to place its tower in a residential area, 150 feet away from the nearest residence, because "Congress did not intend to have wireless service providers depend upon the munificence of local governments to build a telecommunications tower when a variance or special exception is required." It is plain from the express language of the Act, and the legislative history, that Congress did not obviate the need to comply with local government requirements, as long as the requirements do not serve to ban towers entirely.

At some future date, if current wireless technology continues to proliferate (and is not replaced by some other technology), society and governments may wish even greater facilitation of construction of facilities necessary for optimal wireless service, despite the impacts on surrounding areas. For now, the balance is drawn in recognition of harmonizing existing local authority over matters affecting land use and community development.

 Under Florida land use law, a variance seeker must demonstrate an exceptional and unique hardship to the individual landowner not shared by other property owners in the area. *Nance v. Town of Indialantic,* 419 So.2d 1041 (Fla.1982). A variance which permits a use not authorized by existing zoning restrictions for a neighborhood is not justified unless no reasonable use can be made of the land without the variance. *Bernard v. Town Council of Palm Beach,* 569

So.2d 853 (Fla. 4th DCA 1990). *See also Metropolitan Dade County v. Betancourt,* 559 So.2d 1237, 1239 (Fla. 3rd DCA 1990) ("where land is zoned for residential use, deprivation of all beneficial use is proved only when it is established by competent evidence that the land cannot be used for any of the purposes permitted in such district"); *Town of Indialantic v. Nance,* 485 So.2d 1318, 1320 (Fla. 5th DCA) ("the hardship must be such that it renders it virtually impossible to use the land for the purpose for which it is zoned."), *rev. denied,* 494 So.2d 1152 (Fla.1986); *Thompson v. Planning Comm'n,* 464 So.2d 1231 (Fla. 1st DCA 1985) (hardship may not be found unless there is a showing that under present zoning no reasonable use can be made of property).

This is not a case where the shape or layout of a piece of property requires placement of a structure that violates a setback requirement in some incidental or minimal way. Without challenging the legality of the setback requirement itself, AT & T seeks to avoid its effect simply because additional cellular capacity is desirable in this area. The Tower Ordinance is a legislative balancing of the accommodation of growing cellular demand with public safety and general welfare. To upset that balance, AT & T must show more than a demand for additional service and a desire to build another tower. If market forces for improved and expanded service were enough to avoid the setback requirements, the County would be obliged to approve every application, virtually without regard to the impact on the surrounding area. Even if the Court were to reject the Board's findings regarding the state of AT & T's efforts to locate towers elsewhere in or near the search ring, there would be no proof of hardship of the kind justifying a variance.

*Incompatibility*—There is undisputed and substantial evidence of the following facts:

1. The proposed site is zoned R–1AA, a single family dwelling district.

2. The proposed tower would be 150 feet from the nearest single family residence.[4]

4. There is some testimony in the record that the nearest house is actually 85 feet away from the proposed tower. (Doc. No. 19, Ex. B, p. 39). As both sides argue that the nearest residential use

is 150 feet away, the Court relies on the distance of 150 feet, as set forth by the Board in its findings of fact.

3. Even at the reduced height of 99 feet, the proposed tower does not meet the height or setback requirements set forth for communications towers under the Code.

From these undisputed facts, the Board concluded that this proposed tower was "too tall and massive to be compatible with the area and the surrounding uses." While other conclusions can be drawn from the same facts, there is enough evidence that a reasonable mind would deem adequate to support the Board's conclusion.

There is substantial evidence in the record supporting AT & T's argument that it has gone to great and laudable lengths to minimize the effect of the proposed tower on the surrounding neighborhood: AT & T has agreed to reduce the height to 99 feet, has agreed to camouflage the tower, and is willing to provide landscaping. AT & T is willing to allow co-location of facilities. Further, there is no indication that the County considered operation of the tower to be noxious or in any way inconsistent with existing land uses in the neighborhood.

Nonetheless, the Board apparently considered and rejected these mitigating factors. It is not for this Court to reweigh that decision, or substitute the decision of the Court for that made by the Board: the only task before the Court is to determine whether there was enough evidence before the Board to support the decision it made. The Board has the authority to determine for itself, within reason and the bounds of the law, which uses and structures are or are not compatible with a particular neighborhood and existing surrounding uses. There is no indication on this record that the Board is against towers, in general, or that the Board's decision was based on any improper consideration, such as electromagnetic field concerns or unarticulated generalized concerns. Here, the Board reviewed the residential character of the neighborhood, the size of the structure and the proximity of the structure to single family residences, and made a determination that the use was not compatible with surrounding uses.

AT & T argues that "if nothing more is required than generalized concerns about aesthetics and property values expressed by residents it will almost never be possible to obtain a special exception or variance to build a communications tower, even a well camouflaged one" (Doc. No. 83 at p. 4). This misconstrues the evidence before the Board and the applicant's role in the permitting process. The only objection a Board may have to allowing a 99 foot tall billboard in the middle of a residential neighborhood may be aesthetics and property values, nonetheless, few would question a zoning department's denial of the same. The record reflects that the Board's difficulty did not lie with the tower, but with the residential character of the neighborhood AT & T wanted to place it in. This was not a generalized concern, but a recognition that 1) a structure the size of the proposed tower would have an impact on the neighborhood and 2) some sites are simply better suited for the placement of monopoles and towers than other sites. Camouflaging the tower does nothing to decrease its mass, height or distance to the nearest residence. Indeed, AT & T cites no authority for the proposition that all one must do to avoid the height and set back requirements set forth in the Code is to camouflage the structure. These observations distinguish the decisions cited by AT & T overturning denials of tower applications.

It is true that a local government's evaluation of "neighborhood compatibility" necessarily includes subjective elements that could be used to mask improper or unsubstantiated considerations. Whether a well designed church steeple of a particular height enhances or infringes on residential character is to some degree a question of taste and aesthetics. But this is not a case where the local authority objects to the addition of a small antenna to an existing tall structure. The proposal calls for a substantial structure, far taller than anything already in the area. It is within the prerogatives of a local government to determine that a tower (or steeple) is too imposing for a particular neighborhood. *Cf. Smart SMR of New York, Inc. v. Borough of Fair Lawn Board of Adjustment,* 152 N.J. 309, 704 A.2d 1271, 1284 (1998). The record contains substantial, if conflicting, evidence supporting the Board's determination that neighborhood incompatibility precludes a variance.

*Consistency with the Tower Ordinance—*
The Board did not separately analyze or rely on inconsistency between the purposes and goals of the Tower Ordinance and this proposed tower. The degree of non-compliance with the Tower Ordinance might have been a legitimate factor for the Board to consider along with AT & T's efforts to satisfy other goals of the Ordinance. However, since the Board did not expressly rely on this criterion for a variance, the Court need not address it further.

### Special Exception

As a practical matter, AT & T's claim for a special exception is secondary to its variance request. Unless there is a variance from the setback requirement, the proposed tower cannot meet the prerequisites to be considered for a special exception as to use of the property. Moreover, if AT & T were able to overcome the Board's finding of no undue hardship, it likely would be able to demonstrate entitlement to the special exception since there has been no showing of other adverse impacts. In light of the Court's determination set forth above, further analysis of the special exception requirements is unnecessary.

### CONCLUSION

Plaintiff AT & T has not shown legal entitlement to reversal of the denial of its request for a variance and a special exception necessary for it to construct and a 99 foot tall church steeple containing a wireless communications antenna. The Clerk is directed to enter final judgment in favor of Defendant Orange County and against Plaintiff AT & T.

### Appendix

### FINDINGS OF FACT

### *CLARIFYING*

**THE BOARD OF COUNTY COMMISSIONER'S ORDER DENYING THE REQUEST FOR A SPECIAL EXCEPTION AND VARIANCE FOR A CAMOUFLAGED TOWER AT 3201 CORRINE DRIVE**

THIS CAUSE came before the Board of County Commissioners (hereinafter "BCC") on the 16th day of December, 1997, in order to set forth written findings of fact, based on substantial evidence contained in a written record, supporting its decision denying the request of AT & T Wireless Services and Corrine Drive Baptist Church (hereinafter referred to as "the Applicant") for a special exception and variance to build a 135–foot steeple with concealed cellular antenna 127 feet in height and equipment station.

### *APPLICABLE REGULATIONS*

The applicable sections of the Orange County Code (hereainfter "OCC") include, but are not limited to, the following sections:

(1) Section 38–78 entitled "Special Exception Criteria,"

(2) Section 30–43(2) & (3) regarding Exceptions and Variances, and

(3) Section 38–1427 on Communication Towers.

True and correct copies of these sections are attached hereto.

### *FINDINGS OF FACT*

Based upon the substantial evidence in the written record, the BCC sets forth its findings of fact in writing as follows:

1. The property is generally located at 3201 Corrine Drive, District 5, Orange County, Florida.

2. On or about July 17, 1996, P. Bruce King, on behalf of the Applicant, filed an Application to the Board of Zoning Adjustment ("BZA") for a "[s]pecial exception to build a 120–foot steeple with concealed cellular antenna and equipment station [and] [v]ariance due to separation requirement of existing land uses." Record, page 0443.

3. A public hearing was held before the BZA on September 5, 1996, which was continued to October 3, 1996. Record, p. 0172. The BZA unanimously denied the Applicant's application "in that the Board finds it does not meet the requirements governing Special Exceptions as spelled out in Orange County Code, Section 30–43(d), *and* denied the Variance request in that there was no unnecessary hardship shown on the land; and further, it did not meet the requirements governing Variances as spelled out in Orange County Code, Section 30–43(3)(g)." Record, page 0173.

 

4. The Applicant appealed the recommendation by the BZA to the BCC and a hearing was held before the BCC on November 12, 1996. Record, pages 0078 & 0069.

5. Proper notice of the November 12th hearing was given to the neighboring property owners and the Applicant.

6. The Applicant submitted a revised plan showing a steeple height of 99 feet, an antenna height of 95 feet, and a reduced width from 14 feet to 12 feet.

7. At the November 12th hearing, the BCC took testimony and evidence. Record, pages 0006–0179.

8. Specifically, the following facts are dispositive:

A. The proposed tower is only 150 feet away from the nearest residential uses. Record, page 0178.

B. The proposed tower does not meet the distance requirement of 300% of the tower height as specified in section 38–1427(d)(2) of the Orange County Code, even for a reduced tower height of 99 feet, because it is only 150 feet away from the nearest residential uses. Record, pages 0468–0475 (code), 0011 (reduced height), & 0178 (nearest home).[1]

C. The tower is too tall and massive to be compatible with the area and the surrounding uses and does not meet the objective criteria for distance separation to residential uses established by the Communication Tower Ordinance. Record, pages 0088 (sketch),

0121–0138 (sketches), 0159–0164 (aerial photograph), 0172–0179 (staff report), 0044 (Transcript, p. 39–40),[2] 0048–0049 (Transcript, p. 43–44),[3] 0054–0055 (Transcript, p. 49–50),[4] & 0060–0061 (Transcript, p. 55–56).

D. The search ring showing the area of preferred tower sites encompasses the Naval Training Center, the Army Reserve Center and Glenridge Middle School. Record, p. 0000, 0115–0116, 0161–0164, & 0462–0465. The Applicant has not adequately demonstrated that it has fully explored the possibility of locating the tower in the Naval Training Center, the Federal Army Reserve, or the Glenridge Middle School. Rather the Applicant has summarily stated those sites were not available. Record, pages 0006–0179.

E. The Applicant's experts stated that it was possible to move outside the search ring by building two towers instead of one. Record, pages 0027 (Transcript, p. 22, lines 18–21) & 0030 (Transcript, p. 25, lines 7–15). Hence, the Applicant has not provided sufficient evidence to show that the proposed tower cannot be constructed at another location or that there is no other alternative to this proposed tower to provide communication services to this area.

F. The Applicant has not met the requirements for a special exception in that it has not shown that the proposed tower is compatible with the surrounding uses.

---

1. At the public hearing, Commissioner Donegan stated:

> Madam Chairman, only the special exception is granted when a use is considered to be compatible with the area. I do not consider this compatible; however, the biggest single factor is the variance request. We've all been sitting up here fighting to make sure that these variance distances between the homes and the towers are part of that ordinance....
> .... And clearly, if anything can be said about me in the last eight years, I have tried to keep a distance between commercial and residential; therefore, I deny the request.

Record, p. 0060–0061 (Transcript, p. 55–56).

2. During the public hearing, Ms. Carmen Bollen stated that:

> This church towers above the rest of the businesses on Corrine Drive. This tower that they're proposing will tower well over that, by

four times the height on the left side and three times the maximum size of the church.

Record, p. 044 (Transcript, p. 39, 1.14–18).

3. At the public hearing, Mr. John Bollen stated:

> [The proposed tower] is four times the height of that church .... I just believe it's grossly out of proportion to the church itself.

Record, p. 0049 (Transcript, p. 44, 1. 6–7 & 16–18).

4. Mr. Todd Brandehoff stated at the public hearing:

> Everybody that bought and build in the neighborhood had single-family homes in mind. Even when you go up and down Corrine Drive, most of the commercial structures, if not all of them, are two-story, and that's it. There is nothing above and out of character in the neighborhood.

Record, p. 0054–55 (Transcript, p. 49–50).

G. The Applicant has not met the requirements for a variance in that it has failed to establish an unnecessary hardship because the Applicant has not adequately explored alternate sites and because it has not shown that the denial of this particular tower at this particular site will be a hardship.

## CONCLUSION

For the foregoing facts and reasons, the Orange County Board of County Commissioners denied the application of AT & T Wireless Services and Corrine Drive Baptist Church for a special exception in a single-family dwelling district (R–1AA) to erect a church steeple 135 feet in height with an internally concealed (camouflaged) communications tower (monopole) 127 feet in height; and a variance to erect a concealed (camouflaged) communications tower 150 feet from a single-family residence in lieu of 381 feet; on the above-described property.

## ORDER

To restate our previous Order rendered on November 20, 1996, based on the evidence of record as set forth in the findings of fact above, the BCC "upheld the decision of the Orange County Board of Zoning Adjustment and denied the request by AT & T Wireless Services and Corrine Drive Baptist Church for a special exception in a single-family dwelling district (R–1AA) to erect a church steeple 135 feet in height with an internally concealed (camouflaged) communications tower (monopole) 127 feet in height; and a variance to erect a concealed (camouflaged) communications tower 150 feet from a single-family residence in lieu of 381 feet...." Record, p. 0001.

/s/Jean C. Bennett
ORANGE COUNTY CHAIRMAN

THE FOREGOING FINDINGS OF FACT HAS BEEN FILED WITH ME THIS 16th DAY OF December 1997.

/s/ (Signature illegible)
DEPUTY CLERK
BOARD OF COUNTY COMMISSION-

ERS
ORANGE COUNTY, FLORIDA