[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-14182
_____

D. C. Docket No. 00-00081-CV-JCT-3

PREFERRED SITES, LLC,

Plaintiff-Appellee-
Cross-Appellant,

versus

TROUP COUNTY,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(July 10, 2002)**

Before BLACK and HULL Circuit Judges, and LAZZARA*, District Judge.

BLACK, Circuit Judge:

_____

*Honorable Richard A. Lazzara, U.S. District Judge for the Middle District of Florida, sitting by designation.

This case involves an application of the Telecommunications Act of 1996 (TCA) to the land use decisions of a local government. Pub. L. No. 104-104, 110 Stat. 56 (codified in scattered sections of 15 and 47 U.S.C.). Preferred Sites, LLC (Appellee) filed suit against Troup County, Georgia (Appellant), alleging the county's Zoning Appeals and Planning Board (the Board) violated § 704(a) of the TCA by denying its application for conditional use approval to construct a multiple user-wireless communication tower. Appellee alleged the Board's decision was not supported by substantial evidence contained in a written record, as required by § 704(a). The district court agreed, granting summary judgment in favor of Appellee and ordering Appellant to approve the conditional use permit. We affirm.

## I. BACKGROUND

A.      *Factual and Procedural Background*

Appellee owns, operates, and manages free-standing wireless communication towers, which typically are used to provide cellular telephone service. Appellee also acts as a site selection firm for the wireless communication industry. As part of this business, Appellee sought to construct a 250-foot tower on a 7.6 acre parcel of property owned by Charles and Ruth Bailey in LaGrange, Georgia, which is located in Troup County. To obtain permission to construct the tower, Appellee, through its agent, applied to the Board for conditional use

2

approval.  Appellee's application was required by the Troup County Zoning

Ordinance, which sets forth the standards for placement, design, and removal of

telecommunications antennas and towers.  Troup County, Ga., Comprehensive

Zoning Ordinance, Appendix A, Art. IV, § 14 (1999).[2]

On June 8, 2000, the Board held a public hearing at which it considered

Appellee's conditional use application.  The minutes of the hearing do not contain

the contents of any discussion or debate concerning the application.  Appellant,

however, submitted to the district court the affidavit of Mike Dobbs, the Zoning

Administrator of Troup County, who attended the meeting.  The affidavit stated

---

[2]The ordinance specifies the following requirements for a proposed tower:
(1) the tower must be constructed on property in an approved zoning district;
(2) the tower must be set back from any off-site structure the more restrictive
distance of (a) 500 feet or (b) the full height of the tower from any off-site
structure and/or be designed to collapse within a specific clear area; (3) the tower
must be enclosed by security fencing not less than 6 feet in height and must be
equipped with an appropriate anti-climbing device; and (4) the tower must meet or
exceed the standards and regulations of the Federal Aviation Administration and
the Federal Communications Commission at the time of erection. *Id.* §§ 14(e),
14(b)(1)-(3).  In addition to these requirements, the ordinance provides the
following information must be in the conditional use request: (1) the height of the
proposed tower; (2) the proximity of the tower to residential structures and
residential district boundaries; (3) the nature and uses on adjacent and nearby
properties; (4) the surrounding topography; (5) the surrounding tree coverage and
foliage; and (6) the design of the tower, with particular reference to design
characteristics which have the effect of reducing or eliminating visual
obtrusiveness. *Id.* §§ 14(e)(1)-(6).  Finally, the ordinance provides the Board, in
granting a conditional use permit, may impose additional conditions as necessary
to minimize any adverse effects of the tower on adjoining properties. *Id.* § 14(e).

several members of the public verbally opposed construction of the tower. These individuals apparently opposed the visual obtrusiveness of the proposed tower. The affidavit, however, contained no further information concerning these citizens' objections.

In addition, five petitions, which collectively contained the signatures of 58 individuals, were submitted to the Board. The petitions objected generally to the construction of the tower. All five standard form petitions had three groupings of blank lines: (1) a set of blank lines to write in the purpose of the petition, the opinion being expressed, the property concerned, and the property's specific location; (2) a set of blank lines to write in an explanation of the proposal for which the petition was being circulated; and (3) a set of lines for individuals' full signatures and complete addresses. Despite the presence of these blank lines, only two of the petitions were complete, indicating both the purpose of the petition was to oppose the tower and the proposal for which the petition was circulated was to object to the construction of the tower. The third petition merely noted the location of the proposed tower and indicated the proposal for which the petition was circulated was to object to the construction of the tower. Finally, the fourth and fifth petitions submitted to the Board contained no information other than the signatures and addresses of people who live in LaGrange, Georgia. Other than the

4

five petitions, no evidence objecting to Appellee's construction of the tower exists in the record.

At the conclusion of the hearing, the Board voted unanimously to deny Appellee's request for conditional use approval. Thereafter, in a letter dated June 12, 2000, the Troup County Zoning Department provided written notification to Appellee that the Board denied its application.

On July 11, 2000, Appellee filed suit against Appellant in the United States District Court for the Northern District of Georgia, alleging the denial of its application violated § 704(a) and requesting mandamus relief. In response, Appellant claimed Appellee's action was untimely filed and Appellee had failed to meet the requirements of the zoning ordinance. Subsequently, Appellee requested permission from the district court to amend its petition to add a claim for damages pursuant to 42 U.S.C. § 1983.

Upon review of the written record, the district court held Appellee's action was filed within the statute of limitations. In addition, the court denied Appellee's request to amend its petition. The district court also held the Board violated § 704(a) because its denial of the application for conditional use approval was not supported by substantial evidence. Accordingly, the district court granted

summary judgment in favor of Appellee and ordered Appellant to approve the conditional use permit.

B.    *Background of the Telecommunications Act of 1996*

The TCA was enacted "to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition."  H.R. Conf. Rep. No. 104-458, at 113 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 124. In addition, the TCA was intended "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies."  Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, 56 (1996).  Wireless telephone service was one of the many telecommunications technologies Congress considered when enacting the TCA.

With respect to the construction of telecommunications facilities, Congress recognized zoning decisions by state and local governments had created an inconsistent array of requirements, which inhibited both the deployment of personal communications services and the rebuilding of a digital technology-based cellular telecommunications network.  H.R. Rep. No. 104-204, at 94 (1995),

6

*reprinted in* 1996 U.S.C.C.A.N. 10, 61.  Despite this recognition, Congress also

acknowledged "there are legitimate State and local concerns involved in regulating

the siting of such facilities . . ., such as aesthetic values and the costs associated

with the use and maintenance of public rights-of-way."  *Id.* at 94-95, *reprinted in*

1996 U.S.C.C.A.N. 10, 61.  As a result, Congress enacted § 704(a) to "preserve[]

the authority of State and local governments over zoning and land use matters

except in . . . limited circumstances . . . ."  H.R. Conf. Rep. No. 104-458 (1996), at

207-08, *reprinted in* 1996 U.S.C.C.A.N. 124, 222.

In § 704(a), codified at 47 U.S.C. § 332(c)(7),[3] Congress enunciated a

[3]47 U.S.C. § 332(c)(7) provides:
(7) Preservation of local zoning authority
    (A) General authority
     Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
    (B) Limitations
    (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—
        (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
        (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
    (ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.
    (iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
    (iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.
    (v) Any person adversely affected by any final action or

number of substantive and procedural limitations upon the authority of state or

local governments to regulate the construction of facilities for wireless

communication services.  Local zoning authorities may not unreasonably

discriminate among providers of functionally equivalent services, may not make

zoning decisions which prohibit or effectively prohibit the provision of personal

wireless services, and may not make zoning decisions premised on concerns

failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

(C) Definitions

For purposes of this paragraph—

(i) the term "personal wireless services" means commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services;

(ii) the term "personal wireless service facilities" means facilities for the provision of personal wireless services; and

(iii) the term "unlicensed wireless service" means the offering of telecommunications services using duly authorized devices which do not require individual licenses, but does not mean the provision of direct-to-home satellite services (as defined in section 303(v) of this title).

9

regarding the environmental effects of radio frequency emissions associated with wireless telephone service. 47 U.S.C. §§ 332(c)(7)(B)(i)(I), 332(c)(7)(B)(i)(II), 332(c)(7)(B)(iv) (1994).

To ensure the enforcement of these limitations, Congress delineated the manner in which zoning decisions are to be made and also provided a mechanism for judicial relief for persons aggrieved by decisions inconsistent with § 704(a)'s requirements. §§ 332(c)(7)(B)(iii), 332(c)(7)(B)(v). For example, decisions to deny approval for the placement, construction, or modification of personal wireless service facilities must be both "in writing and supported by substantial evidence contained in a written record." § 332(c)(7)(B)(iii). In addition, if a state or local government acts in a manner inconsistent with § 704(a)'s statutory requirements, any person adversely affected by the action may, "within 30 days after such action . . . commence an action in any court of competent jurisdiction." § 332(c)(7)(B)(v). By structuring the TCA in this manner, Congress explicitly preserved local zoning authority over the siting of wireless facilities, while permitting judicial oversight as to the manner in which such decisions are made. §§ 332(c)(7)(A), 332(c)(7)(B)(v).

## II. DISCUSSION

Appellant raises the following three issues on appeal: (1) whether Appellee's suit was timely filed; (2) whether the Board's decision to deny the application for conditional use approval was supported by substantial evidence contained in a written record; and (3) whether Appellee was entitled to mandamus relief.[4]  All three issues involve questions of first impression in this Circuit concerning the application of § 704(a) to local zoning decisions.

A.    *Timeliness of Appellee's Suit*

The TCA provides any party aggrieved by a state or local authority's "final action" may challenge such action, if it is inconsistent with § 704(a)'s requirements, in any court of competent jurisdiction, as long as the challenge is filed within 30 days of the final action.  47 U.S.C. § 332(c)(7)(B)(v) (1994).  In this case, Appellee filed its complaint challenging the Board's denial 29 days after receiving written notification of the decision.  Appellant, however, argued Appellee's suit was untimely filed.  The district court disagreed, holding Appellee's challenge was filed within the statute of limitations.  Appellant contends the Board's oral decision to deny Appellee's application was the "final

---

[4]Appellee cross-appeals, arguing the district court erred by denying its request to amend its complaint to include a claim for damages under 42 U.S.C. § 1983. We affirm the district court's decision on this issue without discussion. *See* 11th Cir. R. 36-1.

11

action" which commenced the running of the 30-day statute of limitations, thereby baring Appellee's suit.[5]

Whether the district court correctly construed § 704(a)'s statute of limitations is a question of law subject to *de novo* review. *See Atl. Land & Improvement Co. v. United States*, 790 F.2d 853, 857 (11th Cir. 1986) (analyzing statute of limitations on tax assessments *de novo*); *see also United States v. Am. States Ins. Co.*, 252 F.3d 1268, 1270 (11th Cir. 2001) (analyzing district court's interpretation and application of statute of limitations *de novo*).

As with any question of statutory interpretation, we begin by examining the text of the statute to determine whether its meaning is clear. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S. Ct. 755, 760 (1999). We must, therefore, examine the language of the TCA for ambiguity. The statute provides in pertinent part:

> (iii) Any *decision* by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal

---

[5]If the "final action" was the Board's June 8, 2000 oral decision denying conditional use approval, such that the "final action" would be the last act the Board could take with respect to deciding whether to deny the request, Appellee's complaint, filed more than 30 days after the oral decision, would be untimely. If, however, the "final action" in this case was the June 12, 2000 memorandum containing the written denial, Appellee's complaint, filed on June 11, 2000, would have been filed within the 30-day statute of limitations.

wireless service facilities *shall be in writing* and supported by substantial evidence contained in a written record .

. . . .

(v) Any person adversely affected by *any final action* or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after *such action* or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

47 U.S.C. §§ 332(c)(7)(B)(iii), 332(c)(7)(B)(v) (emphasis added).

The term "final action" is not defined by the statute, but its plain meaning is not ambiguous. The language of the statute requires the issuance of a "decision . . . in writing." 47 U.S.C. § 332(c)(7)(B)(iii). The language also provides for an appeal from a "final action" within 30 days of "such action." § 332(c)(7)(B)(v). To determine when the statute of limitations begins to run under § 704(a), we must, therefore, determine the meaning of "final action" in § 332(c)(7)(B)(v) as it relates to a "decision . . . in writing" in § 332(c)(7)(B)(iii).

Based on the plain language of the statute, we conclude a "final action" occurs when the state or local authority issues its written decision. The statute expressly mandates a state or local government's decision to be committed to writing. Until the state or local authority issues its written notification, its task under the statute is not complete. Putting the decision in writing is the last action

13

the authority is statutorily required to take; therefore, the issuance of the written decision is logically the "final action."  This reading of the provisions of § 704(a) makes sense because no action by the state or local authority can be "final" until the decision is written.[6]  Consequently, the plain language of § 704(a) mandates the written decision is the "final action."[7]  *Cf. Indus. Communications & Elecs., Inc. v. Town of Falmouth*, No. 98-397-P-H, 1999 WL 33117159, at *3 (D. Me. June 10, 1999) ("[T]here can be no final action by the local permitting body until there is a written decision.") (citation omitted).

Concluding the "final action" is the state or local authority's written decision is also consistent with traditional appellate procedure.  An action filed by an aggrieved party under § 332(c)(7)(B)(v) is similar to an appeal.  Customary appellate practice requires entry of a written judgment from which a party can appeal.  *See generally* Fed. R. App. P. 3 &  Fed. R. Civ. P. 54, 58; *see also* 12

---

[6]We note a state or local government or instrumentality thereof could not circumvent a party's right to commence an action by not issuing a written decision because the TCA also provides a party may file an action for a failure to act. 47 U.S.C. § 332(c)(7)(B)(v).

[7]The plain meaning of the language "final action" also is not ambiguous because to give the term "final action" any other meaning would create varying and inconsistent limitations periods in § 704(a).  Parties could contend any number of actions, such as the oral pronouncement of the decision, was the "final action."  Creating such a lack of uniformity in the application of the 30-day statute of limitations is a result contrary to the language of the statute.

James Wm. Moore, et al., Moore's Federal Practice §§ 58.02- 58.04 (3d ed. 2002).

Appellate procedure also provides that the time within which an appeal can be filed runs from the entry of the written decision or order being appealed. Fed. R. App. P. 4(a); *see also* 12 James Wm. Moore, et al., Moore's Federal Practice § 58.04 ("The time for filing . . . a notice of appeal is determined by the time of entry of judgment."). *See generally Reynolds v. Golden Corral Corp.*, 213 F.3d 1344, 1345-46 (11th Cir. 2000) ("[C]ases from both the Supreme Court and the circuit courts of appeal make it clear that the time to file a notice of appeal does not begin to run until a separate judgment is entered pursuant to Rule 58." (citations omitted)).[8]   As a result, just like the period of time within which a party may file an appeal traditionally runs from the entry of a written decision, the time within which a party may commence an action under § 704(a) starts to run from the date on which the state or local government issues its written decision. The "final action" which triggers the running of the 30-day statute of limitations, therefore, is the state or local authority's issuance of its decision in writing.

B.    *Substantial Evidence for the Board's Denial*

---

[8]In addition, even when an appeal is filed after the court announces a decision, but before the entry of the judgment, it is treated as being filed on the date of entry. Fed. R. App. P. 4(b)(2); *see also Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1356-57 (11th Cir. 1994) (holding premature notice of appeal was treated as entered on date of entry of final judgment).

Section 704(a) requires a decision by a zoning board denying a request to construct a personal wireless service facility, *i.e.*, a tower, to be both in writing and supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(iii) (1994). Appellant contends the district court erred in holding its decision to deny Appellee's application for conditional use approval was not supported by substantial evidence contained in a written record.

Although § 704(a) requires a local zoning board's decision to be both in writing and supported by substantial evidence, it does not statutorily define the term "substantial evidence."[9] The Conference Committee for the TCA, however, expressly noted "substantial evidence" is meant to be "the traditional standard used for judicial review of agency actions." H.R. Conf. Rep. 104-458, at 208, *reprinted in* 1996 U.S.C.C.A.N. 124, at 223; *see also Telespectrum, Inc. v. Pub. Serv. Comm'n*, 227 F.3d 414, 423 (6th Cir. 2000) (concluding "substantial evidence" as used in the TCA means the traditional standard used for judicial review of agency actions); *Petersburg Cellular P'ship*, 205 F.3d 688, 694 (4th Cir. 2000) (same); *Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 407-08 (3d Cir. 1999)

---

[9]The TCA also fails to define what is required for a decision to be "in writing." We recognize the district court held Appellant's decision failed to meet the "in writing" requirement of § 332(c)(7)(B)(iii). We express no opinion on the issue, however, because it is not necessary for the resolution of this case, as we conclude the decision was not supported by substantial evidence.

16

(same); *Aegerter v. City of Delafield, Wis.*, 174 F.3d 886, 889 (7th Cir. 1999) (same); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999) (same). Moreover, "substantial evidence" is a legal term of art, so we presume Congress intended for us to apply its established meaning. *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 342, 111 S. Ct. 807, 811 (1991).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938). Although the "substantial evidence" standard is not as stringent as the preponderance of the evidence standard, it requires courts to take a harder look than when reviewing under the arbitrary and capricious standard. *Color Pigments Mfrs. Ass'n, Inc. v. OSHA*, 16 F.3d 1157, 1160 (11th Cir. 1994). Finally, to determine whether the substantial evidence standard is met, a court should view the record in its entirety, including evidence unfavorable to the state or local government's decision. *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523, 101 S. Ct. 2478, 2497 (1981).

A court cannot substitute its own judgment for that of the local board, but it must overturn the board's decision if the decision is not supported by substantial evidence. *See Bickerstaff Clay Prods. Co. v. NLRB*, 871 F.2d 980, 984 (11th Cir.

1989). As a result, the TCA's requirement that local decisions be supported by substantial evidence "does not 'affect or encroach upon the substantive standards to be applied under established principles of state and local law.'" *Oyster Bay*, 166 F.3d at 494 (quoting *Cellular Tel. Co. v. Zoning Bd. of Adjustment*, 24 F. Supp. 2d 359, 366 (D.N.J. 1998)); *see also AT&T Wireless Servs. of Fla., Inc. v. Orange County*, 23 F. Supp. 2d 1355, 1358-59 (M.D. Fla. 1998) (noting same). We have reviewed the record in its entirety and conclude the Board's decision to deny Appellee's application for conditional use approval was unsupported by substantial evidence. The record reveals Appellee submitted an application for conditional use approval to construct a 250-foot wireless telecommunications tower on property with an appropriate zoning classification approved for the construction of a tower. Appellee's application included all the information required by the Troup County zoning ordinance. Although a public hearing on Appellee's application was held on June 8, 2000, the minutes of the hearing do not reflect that any opposition to the application was raised.

The only evidence of opposition to Appellee's application contained in the written record are the five petitions signed by a total of 58 citizens of LaGrange, Georgia. Of the five petitions, two contained only individuals' signatures and addresses. Nowhere on these two petitions was there even an indication of the

18

reason the individuals signed the petitions. Of the other three petitions, one was only partially completed. It noted only the location of the proposed tower, but not the purpose of the petition nor the opinion being expressed. The petition did, however, indicate the proposal for which the petition was circulated was to object to the construction of the tower. Only two of the petitions were complete, indicating both that the purpose of the petition was to express an opinion opposing the specific tower Appellee intended to build and that the proposal for which the petition was circulated was to object to the construction of that tower. Even these two petitions, however, provided only generalized objections with no articulated reasons for the opposition. Based on the entire written record, we conclude the scant evidence of opposition to the construction of Appellee's proposed tower did not amount to substantial evidence.

Although the written record does not reflect any opposition to Appellee's conditional use application other than the petitions, we recognize Appellant submitted the affidavit of Michael Dobbs to the district court. Dobbs' affidavit explains that he attended the hearing and recalls several members of the public, who resided in the vicinity of the site for the proposed tower, verbally opposed construction of the tower. Their opposition apparently consisted of general concerns about the negative aesthetic impact of the proposed tower.

19

Even if Dobbs' affidavit could be construed as part of the written record, we conclude the citizens' generalized concerns about aesthetics are insufficient to constitute substantial evidence upon which the Board could rely. Aesthetic concerns may be a valid basis for denial of a permit *if* substantial evidence of the visual impact of the tower is before the board. *Southwestern Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 61 (1st Cir. 2001); *Omnipoint*, 181 F.3d at 408-09; *Aegerter*, 174 F.3d at 890-91; *Oyster Bay*, 166 F.3d at 495. Mere generalized concerns regarding aesthetics, however, are insufficient to create substantial evidence justifying the denial of a permit under §704(a) of the TCA. *See generally Telespectrum*, 227 F.3d at 424; *Omnipoint*, 181 F.3d at 409; *Oyster Bay*, 166 F.3d at 496. Consequently, even construing the concerns voiced about aesthetics at the hearing as opposition contained in the written record, we conclude such meager evidence is insufficient to support the Board's denial of Appellee's application. There being no other evidence in the written record opposing the approval of

Appellee's application,[10] the Board's decision was unsupported by substantial evidence.

C.    *Remedy for Violation of Requirements of § 704(a)*

Section 704(a) does not specify the appropriate remedy if a court of competent jurisdiction determines a state or local authority violated the requirements contained therein. Appellant contends, however, the district court erred by granting mandamus relief requiring Appellant to grant Appellee's application for conditional use approval.

Whether the district court properly awarded equitable relief to Appellee is subject to a mixed standard of review. *See United States v. Gilbert*, 244 F.3d 888, 908 (11th Cir. 2001). We review the district court's decision to grant or deny equitable relief for abuse of discretion, underlying questions of law *de novo*, and

_____

[10]Although the Board did not articulate any reasons for its denial at any time prior to the commencement of this action, Appellant argued to the district court its denial was based on three reasons: (1) Appellee lacked standing to apply for the permit; (2) Appellee failed to establish gaps existed in wireless coverage; and (3) Appellee did not include specifications of design characteristics which would reduce or eliminate the tower's visual obtrusiveness. These reasons, however, were not espoused prior to the commencement of this action. Appellant may not rely on rationalizations constructed after the fact to support the denial of Appellee's application. Instead, as the TCA requires, the reasons for the denial of a request to place, construct, or modify personal wireless facilities must be supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(iii).

findings of fact upon which the decision to grant equitable relief was made under the clearly erroneous standard. *Id.*; *see also* Fed. R. Civ. P. 52(a). *See generally Boire v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 479 F.2d 778 (5th Cir. 1973).[11]

The grant of equitable relief is a matter of judicial discretion. *See CNA Fin. Corp. v. Brown*, 162 F.3d 1334, 1337 (11th Cir. 1998) (citing *Eccles v. Peoples Bank,* 333 U.S. 426, 431, 68 S. Ct. 641, 644 (1948)); *see also Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1563 (11th Cir. 1988) (explaining grant or denial of equitable relief lies in the discretion of the district court). Mandamus, which is an extreme form of equitable relief, "is a writ designed to require an official to perform an act required by law." *See Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 587 (11th Cir. 1990). Although the writ of mandamus was abolished by Federal Rule of Civil Procedure 81(b), federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (2000); *see also Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1385 (11th Cir. 1998) (en banc)

---

[11]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

(recognizing the writ of mandamus may issue to correct a clear abuse of discretion or the failure to carry out a ministerial task).

Pursuant to their powers under 28 U.S.C. § 1651, federal courts continue to grant equitable relief, which sometimes are referred to as "writs of mandamus." *See generally Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co.*, 260 F.2d 637, 640 (2d Cir. 1958) (noting courts continue to issue orders that "for brevity, we may still speak of as a mandamus.") As a result, a "writ of mandamus" frequently grants the same relief to a party as a mandatory injunction, which orders a party to "take action." *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484, 116 S. Ct. 1251, 1254 (1996), *quoted in United States v. Gilbert*, 244 F.3d 888, 908 n.49 (11th Cir. 2001); *see also Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("A mandatory injunction, in contrast [to a prohibitory injunction], is said to alter the status quo by commanding some positive act.").

Although the TCA does not statutorily provide a remedy for a violation of § 704(a), it does require a "court of competent jurisdiction"[12] to "hear and decide

---

[12]Courts have construed this phrase and similar phrases to include both state and federal courts. *See Telespectrum, Inc. v. Pub. Serv. Comm'n*, 227 F.3d 414, 421 (6th Cir. 2000) (concluding actions under the TCA may be filed in state or federal court); *Petersburg Cellular P'ship v. Bd. of Supervisors*, 205 F.3d 688, 694 (4th Cir. 2000) (indicating same); *see also Adams v. Maryland*, 347 U.S. 179, 181-

[an action arising from a violation of § 704(a)] on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v) (1994). A number of courts have considered this issue and held an injunction (or other equitable relief) in the form of an order to issue the relevant permits is a proper form of relief under § 704(a).[13]

---

82, 74 S. Ct. 442, 445 (1954) (reasoning "any court" included state courts); *Freeman Brown Co. v. Harris*, 139 F. 105, 108 (4th Cir. 1905) (holding "court of competent jurisdiction" includes federal courts).

[13]*See Brehmer v. Planning Bd.*, 238 F.3d 117, 120-22 (1st Cir. 2001) (affirming district court's grant of injunction ordering board to issue permit and concluding remand would serve no useful purpose); *Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 409-10 (3d Cir. 1999) (affirming district court's grant of injunction ordering the board to issue a special exception to the planning code, concluding remand served no purpose); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999) (affirming district court's grant of injunction ordering the town to issue the permits, concluding remand would serve no useful purpose); *Patterson v. Omnipoint Communications*, 122 F. Supp. 2d 222, 227-28 (D. Mass. 2000) (recognizing an injunction ordering issuance of a permit is a proper remedy for a violation of the sitting provisions of the facilities sitting subsection of the TCA); *New York SMSA, L.P. v. Town of Clarkstown*, 99 F. Supp. 2d 381, 389-90 (S.D.N.Y. 2000) (recognizing an injunction is the proper remedy for a violation of the sitting provisions of the facilities sitting subsection of the TCA, but declining to grant an injunction on the facts of the case); *Group EMF, Inc. v. Coweta County*, 50 F. Supp. 2d. 1338, 1350-51 (N.D. Ga. 1999) (granting mandamus relief to plaintiff by ordering board of commissioners to grant a permit and concluding remand would frustrate intent of TCA to provide relief on an expedited basis); *360 Communications Co. v. Bd. of Supervisors*, 50 F. Supp. 2d. 551, 564 (W.D. Va. 1999) (holding injunctive relief ordering issuance of a permit is the remedy that best serves the TCA's goal of expediting resolution of actions and granting such an injunction); *Iowa Wireless Servs., L.P. v. City of Moline, Ill.*, 29 F. Supp. 2d 915, 924 (C.D. Ill. 1998) (ordering city to issue permit as remedy for violation of TCA); *Illinois RSA No. 3, Inc. v. County of Peoria*, 963 F. Supp. 732, 746 (C.D. Ill. 1997) (concluding an injunction directing county to issue permit

In this case, the district court found Appellant violated § 704(a), thereby entitling Appellee to relief. As a result, the district court granted Appellee's petition for summary judgment, which included a request for a writ of mandamus ordering Appellant to grant the application for conditional use approval. Although the district court's order did not specify the type of relief granted, the nature of the relief granted was in the form of an injunction.[14] We conclude an injunction ordering issuance of a permit is an appropriate remedy for a violation of § 704(a).

In light of our standard of review, we hold the district court's determination that remanding this case would frustrate the TCA's guarantee of expedited relief

was appropriate relief under TCA); *AT&T Wireless PCS Inc. v. City of Chamblee*, 10 F. Supp. 2d 1326, 1333-34 (N.D. Ga. 1997) (granting mandamus relief to plaintiff by ordering council to issue a permit, recognizing other forms of relief could be appropriate, and concluding remand would serve no purpose but would frustrate TCA's direction to expeditiously resolve the matter); *Sprint Spectrum L.P. v. Jefferson County*, 968 F. Supp. 1457, 1463 (N.D. Ala. 1997) (holding the TCA vests court with authority to grant mandamus relief); *BellSouth Mobility Inc. v. Gwinnett County, Ga.*, 944 F. Supp. 923,929 (N.D. Ga. 1996) (granting mandamus relief to plaintiff by ordering board of commissioners to grant a permit and concluding remand would frustrate intent of TCA to provide relief on an expedited basis).

[14]Regardless of whether the relief afforded to Appellees was mandamus or injunctive, in light of the developing case law holding injunctive relief best serves the TCA's explicit goal of expediting resolution of this type of action, *see* 47 U.S.C. § 332(c)(7)(B)(v), we conclude the district court did not abuse its discretion by ordering Appellant to approve Appellee's application for conditional use approval.

25

was not clearly erroneous. Additionally, the district court did not abuse its discretion by ordering Appellant to approve Appellee's application for conditional use approval.

### III. CONCLUSION

Under § 704(a), the final action which triggers the running of the 30 days within which an aggrieved party may commence an action is a state or local government's written denial of the party's request to place, construct or modify a personal wireless service facility. Because Appellee's action was filed within 30 days of the Board's written denial, it was timely. Moreover, although aesthetic concerns may support a denial of a party's request to place, construct or modify a personal wireless service facility if evidence of the facility's visual intrusiveness is substantial, the generalized concerns of citizens in this case did not amount to substantial evidence. The Board's decision, therefore, was unsupported by substantial evidence, and Appellee was entitled to relief. Accordingly, we affirm.

AFFIRMED.