[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 25, 2002
THOMAS K. KAHN
CLERK

_____

No. 00-15964

_____

D. C. Docket No. 99-02933 CV-B-NE

AMERICAN TOWER LP,
a Delaware limited partnership,
TRITEL COMMUNICATIONS INC.,
a Delaware corporation, et al.

                                        Plaintiffs-Appellees,


        versus


CITY OF HUNTSVILLE,
DAVID WILLIAMS, individually and in his
capacity as a Member of the Board of Zoning
Adjustment of the City of Huntsville, et al.,

                                        Plaintiffs-Appellants,


DALLAS FANNING, individually and in his capacity
as Director of the Planning Department of the City
of Huntsville,
HULAN SMITH, individually and in his capacity as
Director of the Inspection Department of the City
of Huntsville,

                                        Defendants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(June 25, 2002)**

Before EDMONDSON, Chief Judge, HILL and LAY[*], Circuit Judges.

EDMONDSON, Chief Judge:

This appeal is about the plaintiffs' attempt to overturn a local zoning board's decision to deny plaintiffs an exception to build a wireless communications tower in a residential neighborhood. We must determine whether "substantial evidence" -- as that term is used in a section of the Telecommunications Act of 1996 -- supports the zoning board's decision. We conclude that it does.

FACTS

American Tower, L.P. ("American Tower") is a company that constructs and operates communications towers for other companies. American Tower and the other plaintiffs (collectively "Plaintiffs") want to construct a wireless communications tower on a particular piece of property ("the proposed tower property") in the City of Huntsville ("the City").

The proposed tower property is currently zoned for residential use. The property is located in an established residential neighborhood and is either near or adjacent to two schools and several soccer fields.

_____

[*]Honorable Donald P. Lay, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

To build a communications tower on the property, American Tower needs to obtain a special exception and variance from the City. The special exception is needed because the property is zoned for residential use, a use that does not normally include construction or operation of a communications tower. See Huntsville, Ala., Zoning Ordinance § 73.20.1(3). The variance is needed because the City has a 100' height limitation and the proposed tower would be 180' tall. See id. § 92.5.3(9)(e). American Tower applied to the Board of Zoning Adjustments ("BZA")[1] of the City for a special exception and variance for the proposed tower property.

The BZA held a public hearing on American Tower's application. No local residents spoke on behalf of the application. Several (10+) residents in the area of the proposed tower property testified against granting the application, and many more (60+) residents signed a petition asking the BZA to deny the application. The BZA, in writing, denied American Tower's application: they sent a letter to American Tower.

Plaintiffs then filed this case. They challenge the BZA's decision. They rely on various provisions of 47 U.S.C. § 332, as well as on other grounds. The

_____

[1]The BZA is a local administrative zoning authority (it is composed of appointed members that decide only whether special exceptions or other specifically enumerated permits should be granted), as opposed to a local legislative zoning authority (composed of elected members that pass the zoning ordinances and zone property in the first instance).

district court, on cross-motions for summary judgment, concluded that the BZA violated 47 U.S.C. § 332(c)(7)(B)(iii) because its decision was not "supported by substantial evidence contained in a written record" as required by Section 332. The district court ordered the BZA to award Plaintiffs a special exception and variance.[2]

DISCUSSION

Land use decisions are basically the business of state and local governments. See, e.g., Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 44, 115 S. Ct. 394, 402 (1994) (noting that "regulation of land use [is] a function traditionally performed by local governments"); FERC v. Mississippi, 456 U.S. 742, 768 n.30, 102 S. Ct. 2126, 2142 n.30 (1982) (stating that "regulation of land use is perhaps the quintessential state activity"). The Telecommunications Act of 1996 ("TCA")

---

[2]Besides noting that Plaintiffs conceded that the BZA's decision was "in writing" as required by Section 332(c)(7)(B)(iii), the district court did not address the merits of Plaintiffs' other challenges -- as contained in their First Amended Complaint -- to the BZA's decision. We, in this opinion, do not decide the merits (or any other portion) of Plaintiffs' claims that are not based on Section 332(c)(7)(B)(iii), or on the district court's rulings on that section.

In the light of the BZA's motion to dismiss, the district court determined that American Tower had standing to bring its application before the BZA and to bring its Section 332(c)(7)(B)(iii) claim in this case. Given the usual rules of agency, the district court's conclusion was correct.

does not say otherwise. See 47 U.S.C. § 332(c)(7)(A) ("Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities."). The legitimate power of federal courts to interfere in the kind of zoning decision involved in this case is limited. Id.; see also Aegerter v. City of Delafield, 174 F.3d 886, 891-92 (7th Cir. 1999).

The BZA challenges the district court's order granting summary judgment to Plaintiffs. The BZA argues that -- contrary to the district court's conclusion -- the BZA's decision is "supported by substantial evidence contained in a written record."

Section 332 allows a party to challenge -- in federal court -- a local zoning board's refusal to allow the construction of a communications tower. One of Section 332's requirements is that a local zoning board's decision to deny an application to construct a tower be "in writing and supported by substantial evidence contained in a written record."[3] 47 U.S.C. § 332(c)(7)(B)(iii). If the

---

[3] No party argues that there is no written record in this case. The BZA's hearing was transcribed (minutes were also prepared). Nor does any party argue that the BZA's decision was not "in writing." The BZA sent American Tower a letter denying their application, and the BZA's reasons for that denial appear in the minutes and transcript of the hearing.

decision is not supported by substantial evidence, Section 332 authorizes federal courts to overrule the local board's decision.[4]

The "substantial evidence" standard envisioned by Section 332 is the traditional substantial evidence standard used by courts to review agency decisions. H.R. Conf. Rep. No. 104-458, at 208 (1996) (noting that traditional standard for review of agency action intended). The usual standard defines "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." AT & T Wireless PCS, Inc. v. City Council of Virginia Beach, 155 F.3d 423, 430 (4th Cir. 1998) (interpreting Section 332) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S. Ct. 456 (1951)). "It requires more than a mere scintilla but less than a preponderance." 360° Communications Co. v. Bd. of Supervisors, 211 F.3d 79, 83 (4th Cir. 2000) (interpreting Section 332). The district court concluded that the BZA's decision was unsupported by substantial evidence. We disagree.

We review the district court's determination that the local zoning board's decision was not supported by "substantial evidence" de novo, applying the same standard -- Section 332's "substantial evidence" standard -- the district court

_____

[4] In this opinion, we do not address, much less decide, what relief is authorized by Section 332.

applied.  AT & T Wireless PCS, Inc. v. Winston-Salem Zoning Bd. of Adjustment, 172 F.3d 307, 312 (4th Cir. 1999).  Under Section 332's "substantial evidence" standard, the party seeking to overturn the local zoning board's decision has the burden of proving that the decision is not supported by substantial evidence.  Cf. Scharlow v. Schweiker, 655 F.2d 645, 648 (5th Cir. Sept. 1981) (party with burden before administrative board has burden of proving on appeal to federal courts that administrative board's decision unsupported by substantial evidence).[5]

When reviewing American Tower's application, factors that the BZA was authorized to consider include the proposed tower's negative aesthetic impact (as well as its effect on property values) and the proposed tower's effect on the health, safety, and welfare of the public.  See Huntsville, Ala., Zoning Ordinance § 92.5.2 (authorizing BZA "to deny special exceptions when not in harmony with the purpose and intent of this ordinance"); see also Chorzempa v. City of Huntsville, 643 So. 2d 1021, 1024 (Ala. Crim. App. 1993) (noting that "[c]urrent authorities recognize neighborhood aesthetics to be integrally bound to property values").[6]

---

[5]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on 30 September 1981.

[6]The BZA decision complied with the City's zoning law.  Plaintiffs argue that the BZA -- an administrative zoning board -- had no authority to consider general evidence on the negative aesthetic impact of the tower and its effect on property values, or to consider general evidence on the health, safety, and welfare concerns of the public.  Plaintiffs contend that the City Council adopted specific zoning regulations with specific requirements for granting special exceptions

The BZA heard testimony from several residents on the negative aesthetic and value impact of the proposed tower. For example, the BZA heard testimony from a local resident who testified that she was a realtor and investor in real estate. She said that, in her 16-year experience as a realtor, once the proposed tower was known in the residential neighborhood, it had made it harder to sell houses in the neighborhood: devaluating the property and hurting the neighborhood. To be more specific about this tower, she also testified that she had already lost potential buyers for her own property in the area because of the proposed tower.[7] In

and variances for communications towers that govern the BZA's decision. See Huntsville, Ala., Zoning Ordinance §§ 73.20.4-.17, 92.5.3(9) (including specific requirements for tower lighting, color, signs, landscaping, etc.). Therefore, Plaintiffs say general evidence of the negative aesthetic impact of a tower on a particular residential district (such as, the effect on property values of the tower on a particular district) or general evidence of the effect of the tower on the health, safety, and welfare of the pertinent public cannot constitute substantial evidence that supports the BZA's decision: only evidence of direct and definite non-conformity with the specific zoning regulations covering communications towers is important. We do not think so. As cited above, the City Council adopted -- in addition to the specific regulations for communications towers -- regulations allowing the BZA "to deny special exceptions when not in harmony with the purpose and intent" of the zoning ordinance generally, id. § 92.5.2, and to deny exceptions adversely affecting the public interest, id. § 92.5.2(4). The ordinance is intended to protect safety and public welfare, to preserve the character of residential districts, and to minimize adverse aesthetic impacts. Id. § 1.3 (general purpose of ordinance). We see the City's specific communications-tower regulations as conditions to be met before one can be even considered for (but not entitled to) a special exception.

[7]We accept these statements as competent evidence of the tower's impact on property values. See Ala. Code § 12-21-114. Issues of value are especially ones of fact to be left to the discretion of the fact-finder. Cf. General Motors Corp. v. Van Marter, 447 So. 2d 1291, 1295 (Ala. 1984). The BZA's decision on this fact, necessarily crediting some witnesses over others when implicitly determining the economic impact of the tower on values for homes in the area, is not one federal judges can just second-guess per the TCA.

While this kind of testimony might not be uncommon at special exception hearings involving towers, we accept that residential districts can exist in which a tower would not impact

8

addition, the BZA heard testimony on safety questions tied to the proposed tower's unusual proximity to two schools and several soccer fields used by children. Even when we look at the evidence on the other side, we think that substantial evidence supported the BZA's decision.[8]

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

on property values significantly. So, significant negative impact on property values is not inherent with towers in residential districts. Therefore, the City Council's conditional authorization of towers in residential districts does not mean that evidence of significant impact on residential values has already been taken into account legislatively, thus, making particularized economic impact no factor for the BZA to consider in the case of an exception sought for a specific tower in a specific residential district.

[8]Plaintiffs spend much time pointing to evidence they presented to the BZA supporting their application, including "an appraisal study prepared by two certified real property appraisers analyzing [the proposed tower property] and other sites in [the City] and other cities in the southeast" that concluded that the proposed communications tower would "not affect the value or marketability of properties in th[e] area." We look at the whole record; but, under the substantial evidence standard of Section 332, we cannot displace the Board's fair estimate of conflicting evidence and cannot freely re-weigh the evidence. We only determine whether substantial evidence exists to support the local board's decision.