[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 6, 2005
THOMAS K. KAHN
CLERK

No. 04-14759
Non-Argument Calendar

_____

D. C. Docket No. 03-80856-CV-DMM

MICHAEL LINET, INC.,
a Florida corporation,

Plaintiff-Appellant,

versus

THE VILLAGE OF WELLINGTON, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 6, 2005)**

Before HULL, WILSON and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This case involves the intersection of the Telecommunications Act of 1996 and local zoning interests. The central issue in this case is whether a local zoning board improperly rejected the application of a wireless agent to build a cell phone site on a golf course within a residential community. The district court held it did not. We agree.

The Village of Wellington is a municipal corporation and a residential community in Palm Beach County, Florida. The Village's Planning, Zoning and Building Department oversees land development and planning issues within the community including the construction of cellular phone sites. Michael Linet, Inc. is a Florida corporation that serves as an agent to various cellular phone service providers. Linet had a contract with Metro PCS, Inc., a cellular phone company, to identify and oversee the construction of a cellular phone site within the Village of Wellington.

These cellular sites are integral to the operation of Metro PCS' mobile phone service network. See Government Accountability Office Report No. 03-501, FCC Should Include Call Quality in Its Annual Report on Competition in Mobile Phone Services, 5 (Apr. 2003) available at http://www.gao.gov/new.items/d03501.pdf (last referenced Apr. 25, 2005) ("GAO Report"). For the network to function Metro must place cellular phone sites in a honey-combed type pattern. See id.

2

Cell sites consist of an antenna mounted to a pole or other structure. Id. The sites relay the low power signals emitted by the handsets that consumers carry back to the cell site which ultimately routes them to another mobile phone or a traditional wire-line telephone. Id. The success or failure of Metro PCS's mobile phone service network is directly tied to its ability to construct cell sites so that its customers are able to utilize their handsets. See id. Cell phone companies market themselves in part on the ability of customers to utilize their phones in various geographic regions. See id. at 9. Indeed, "[m]ost customers sign contracts that specify a geographically based rate plan and the size of the block of minutes the customer is buying for a flat monthly fee." Id.

Linet identified the Village's Golf and Country Club as an ideal site and proposed building a 120 foot flagpole with a cellular communications antenna concealed inside. Because the height of the pole exceeded 60 feet, Linet was required to obtain approval from the Village before constructing the pole. Linet's proposal was not well received by the Village's residents. After a hearing reviewing the merits of Linet's application, the Village, based on objections by the residents, refused to issue a permit to construct the pole. The residents' primary concern, voiced at a June 2003 meeting, was the impact the pole would have on the value of their property. Residents testified that they would not have purchased

3

their homes if the pole was present and a local realtor testified the pole would adversely impact home resale values. Other ancillary concerns included the impact the pole might have on nearby non-commercial air traffic and the pole's proximity to a middle school.

Linet argues that these objections amount to an impermissible pure aesthetic or "not in my back yard" objection. He maintains that the only factually based testimony was provided by two non-residents. The first, an executive director of another telecommunications facility that had constructed a similar cell site after resident opposition, testified that the pole would not adversely impact property values. The second, a real estate appraisal executive, provided similar testimony based on a study involving condominium sales in Boca Raton, Florida. Linet also complained that another 150-foot telecommunications structure was constructed on a different site within the Village.

After the permit request was denied Linet sued the Village in federal court alleging violations of the Telecommunications Act of 1996, 47 U.S.C. § 332, and 42 U.S.C. § 1983. The district court dismissed the § 1983 claim, holding that Linet was limited to his cause of action under the Telecommunication Act because it provided a comprehensive statutory scheme to redress his grievance. Afterwards Linet amended his complaint to add a state due process claim. The district court

4

granted summary judgment on this claim and the Telecommunications Act claim, holding that the Village did not violate the Telecommunications Act and that the statute of limitations on Linet's due process claim had expired.  This appeal followed.  Linet argues on appeal that (1) a violation of the Telecommunications Act can give rise to a § 1983 claim, (2) the Village's denial of the cellular site permit application was not supported by substantial evidence as required by the Telecommunications Act, (3) the Village violated the Telecommunications Act by unreasonably discriminating against Linet by allowing another cellular provider to build a different structure on another site, (4) the state law due process claim was not barred by the statute of limitations, and (5) the district court improperly denied Line's motion to alter or amend the final judgment. We affirm.

We review *de novo* a district court's order granting a motion for summary judgment and construe "all reasonable doubts about the facts in favor of the non-movant." Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990). We also review *de novo* the district court's determination that the local zoning board's decision was supported by substantial evidence.  Am. Tower LP v. City of Huntsville, 295 F.3d 1203, 1207 (11th Cir. 2002)

Section 1983 claim.

The district court correctly concluded that a violation of the

5

Telecommunications Act does not give rise to an action under 42 U.S.C. § 1983. The Supreme Court addressed this precise issue while this appeal was pending in City of Rancho Palos Verdes, Cal. v. Abrams, ___ U.S. ___, 125 S.Ct. 1453, ___ L.Ed.2d. ___ (2005).  The Court noted that "§ 1983 does not provide an avenue for relief every time a state actor violates federal law." Id.  125 S.Ct. at 1458.  After identifying the express private remedy in the Telecommunications Act, §332(c)(7), the Court concluded that Congress did not intend this remedy to coexist with an alternative remedy available in a § 1983 action.  Id.  This holding dooms Linet's first argument on appeal.

Telecommunications Act claims

The Telecommunications Act of 1996, 47 U.S.C. § 332, deregulated various aspects of the wireless phone industry.  The Act was meant to promote competition and higher quality in American telecommunications services and "to encourage the rapid deployment of new telecommunications technologies." Id. 125 S.Ct. at 1455.  The wireless phone industry has grown dramatically in the wake of the Act with customer minutes used per month increasing 900% from 1997 (5.5 billion) to 2002 (55.5 billion).  GAO Report at 8.  Revenues have also grown exponentially from $482 million in 1985 to $76 billion in 2002.  Id.

The Act preserved limited authority of state and local governments to

regulate the location, construction, and modification of wireless telecommunication facilities.  See Ranchos Palos Verdes, 125 S.Ct. at 1455.  This authority "has enabled the states and localities to affect both the level of competition and the quality of mobile phone calls." GAO Report at 14. The Act however prevents local government from, among other things,  "unreasonably discriminating" among providers of functionally equivalent services or denying requests for authorization to locate wireless facilities without issuing a written decision "supported by substantial evidence."  47 U.S.C. § 332(c)(7)(B).

Our cases highlight that a common objection residents have to the construction of a cell site is that it detracts from the aesthetic appeal of the community.  See, e.g., Am. Tower, 295 F.3d at 1208; Preferred Sites, LLC v. Troup County, 296 F.3d 1210 (11th Cir. 2002).   A blanket aesthetic objection does not constitute substantial evidence under § 332.  See Preferred Sites, 296 F.3d at 1219.  Such a standard would eviscerate the substantial evidence requirement and unnecessarily retard mobile phone service development.  Aesthetic objections coupled with evidence of an adverse impact on property values or safety concerns can constitute substantial evidence.  See Am. Tower, 295 F.3d at 1208-9 (holding that testimony by residents and realtor on negative impact on property values along with safety concerns because of proximity to a school constituted substantial

evidence sufficient to reject construction application). Also relevant is whether the company can reasonably place a cell site in an alternative location and eliminate the residents' concerns. See PrimeCo Pers. Communications, Ltd. P'ship. v. City of Mequon, 352 F.3d. 1147, 1151 (7th Cir. 2003).

The district court held correctly that the Village's decision to deny Linet's permit was based on substantial evidence received at the June 2003 hearing. We have held that the "substantial evidence" standard is the traditional substantial evidence standard used by courts to review agency decisions. Am. Tower, 295 F.3d at 1207. "It requires more than a mere scintilla but less than a preponderance." Id. (internal citation omitted). Linet has the burden of proving the Village's decision was not supported by substantial evidence. Id.

The Village met this standard. It heard objections from residents and a realtor concerning the cell site's negative impact on real estate values. The Village also heard testimony that the proposed site was unnecessarily close to a local middle school. Under our case law this testimony was sufficient to support the board's determination. Linet's expert testimony contradicting the adverse property value impact concerns was provided by a telecommunications executive who placed a tower in a different part of the community and a realtor who based his knowledge on condominium sales in a different county. This does not change our

8

conclusion. The residents were worried about the impact of this tower on the golf course within their community, not a different tower, different location, or different community. Linet also failed to show that an alternative location was unavailable or unfeasible.

Linet's unlawful discrimination argument is equally unconvincing. Nothing in the Telecommunications Act precludes the Village from reasonably discriminating between two telecommunications providers. See 47 U.S.C. § 332(c)(7)(B)(i)(I). Indeed the Telecommunications Act "explicitly contemplates that some discrimination 'among providers of functionally equivalent services' is allowed." AT&T Wireless PCS, Inc. v. City Council of City of Va. Beach, 155 F.3d 423, 427 (4th Cir. 1998). Only unreasonable discrimination is illegal. See 47 U.S.C. § 332(c)(7)(B)(i)(I).

The phrase "unreasonably discriminate among providers of functionally equivalent services" was intended to provide localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services. H.R. Conf. No. 104-458, at 208 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 222. Linet has not shown that he was precluded from proposing an alternative cell site and did not present any evidence

9

that an alternative site would adversely effect Metro PCS' cellular coverage.

Moreover the alternative site utilized by the other provider may have had less of an

impact or no impact on property values or otherwise not raised the same concerns

as the golf course site proposed by Linet.  As the district court noted, the

Telecommunications Act does not prevent the Village from treating two applicants

different, it just prevents it doing so unreasonably.

Due Process

Linet argues that his due process relates back to his "bad challenge claim" in

his original complaint.  Put differently, he wants us to read the § 1983 claim in his

original complaint filed in district court as a petition for writ of certiorari to review

the Village's decision under Florida law.  If we do not, Linet correctly concedes

that his state law due process claim in his amended complaint is barred by the 30-

day statute of limitations. See Fla. R. App. P. 9.100.  Linet however has identified

no authority to support this interpretation.

His original complaint makes no mention of Florida procedure or a state law

claim.  His two claims in this complaint are limited to the Telecommunications Act

and § 1983.  Only the Telecommunications Act claim is legally cognizable.

Moreover pursuant to 28 U.S.C. § 1367 (c)(3) the district court could decline to

exercise supplemental jurisdiction over this claim once the Telecommunications

10

Act claim was dismissed. The district court therefore correctly dismissed Linet's state law due process claim. See Am. Riviera Real Estate Co. v. City of Miami Beach, 735 So.2d 527 (Fla.3d DCA 1999).

Alter or Amend the Judgment

Finally Linet appeals the district court's denial of his motion to amend or alter the final judgment under Federal Rule of Civil Procedure 59(e). Linet's motion to the district court urged it to reconsider its ruling because Linet disagreed with the district court's treatment of certain facts and its legal conclusions. His motion was essentially a motion to reconsider the district court's prior summary judgment order. Linet however cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment. See Stone v. Wall, 135 F.3d 1438, 1442 (11th Cir. 1998); 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995). The district court correctly denied Line's motion to amend or alter the judgment.

**AFFIRMED.**