[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12031
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00270-CB-M

MICHAEL HENRY SMITH,

Plaintiff-Appellant,

versus

BP AMERICA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(July 5, 2013)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Michael Henry Smith, proceeding *pro se,* appeals the district court's order

denying his motion for partial summary judgment and granting summary judgment

in favor of BP America, Inc. on his Jones Act, maintenance and cure, and unseaworthiness claims. Mr. Smith also appeals the district court's denial of his motions to compel discovery and his motion to alter or amend judgment. For the reasons stated below, we affirm.

## I.

After the Deepwater Horizon disaster, Mr. Smith was hired by Marine Contracting Group, LLC to work as a boat hand responsible for installing, inspecting, and maintaining floating booms—temporary floating barriers used to contain an oil spill—in the waters of Orange Beach, Alabama. Marine Contracting, a contract labor business specializing in the shipyard industry, hired workers on behalf of Oil Recovery Company ("ORC") to work on the oil spill's cleanup efforts.

After receiving forty hours of "hazwhopper training," Mr. Smith reported to work at the ORC offices in Mobile, Alabama. From there, Mr. Smith and Matt Palmer, an ORC employee, drove to Orange Beach in a pickup truck towing a "jet boat" vessel used to deploy floating booms. Mr. Smith worked at Orange Beach for three days between May 10 and May 12, 2010. On May 12, 2010, Mr. Smith was checking and deploying floating booms from a boat when he fell overboard. Mr. Smith returned to the boat and continued working without receiving medical

2

attention. ORC fired Mr. Smith later that day for being an unsafe and problem employee.

The next day, Mr. Smith sent an email to Paul Jones, the president of ORC. In the email, Mr. Smith thanked Mr. Jones for giving him a job with ORC, and also explained that he "gently slid" off the side of the boat. ORC did not rehire Mr. Smith.

## II.

Mr. Smith filed a complaint against Moran Environmental Recovery, LLC and BP America, Inc.[1] Mr. Smith asserted three claims: (1) a negligence claim under the Jones Act, *see* 46 U.S.C. § 30104 *et seq.*; (2) a claim for maintenance and cure under general maritime law; and (3) a claim for unseaworthiness under general maritime law. After a settlement with Moran, the case between Mr. Smith and BP proceeded to discovery.

At the beginning of discovery, Mr. Smith provided BP with a request for the production of documents. The request included (1) all contracts between BP and its contractors and subcontractors relating to the oil spill; (2) personnel files for all BP employees working on oil spill response; (3) all leases, sub-leases, and purchase agreements for both real and personal property secured by BP for work on oil spill

---

[1] In Mr. Smith's original complaint, this defendant was listed as "British Petroleum." *See* D.E. 1. The name was changed to "BP America, Inc." in the first amended complaint upon the magistrate judge's order. *See* D.E. 37.

response; (4) all photographs related to the Deepwater Horizon disaster; and (5) all interviews given by BP employees related to the Deepwater Horizon disaster.

BP objected to these discovery requests as being overly broad, and Mr. Smith filed a motion to compel discovery. In response, BP offered to produce a narrower set of documents, insofar as they existed, including (1) BP's contracts with Mr. Smith's employer for the work he performed in May of 2010; (2) documents relating to Mr. Smith's employment in BP's possession, custody, or control; (3) documents relating to any decision by BP to terminate Mr. Smith; and (4) any documents relating to any discussions with Mr. Smith's employer regarding his termination. The district court denied Mr. Smith's motion to compel discovery, concluding that Mr. Smith's requests were "too broad in time and scope and not focused on the particulars of the action, namely his accident and safety concerns while on the job at the Orange Beach Site, and his subsequent dismissal and employment blacklisting." The district court ordered BP to produce the narrower set of documents.

Mr. Smith then attempted to narrow his original request to cover a smaller geographic area spanning over 100 miles of coastline. BP objected again, and Mr. Smith filed another motion to compel discovery. The district court denied Mr. Smith's second motion to compel after determining that his request again remained overly broad. Ultimately, BP produced a Master Service Contract ("the ORC

4

contract") executed between BP and ORC in September of 2010, four months after Mr. Smith's accident. BP, however, did not produce a contract spanning the time of Mr. Smith's employment because BP stated that it had not executed a formal contract with ORC at that time.

At the close of discovery, Mr. Smith filed a motion for partial summary judgment seeking a determination that BP was his employer. BP moved for summary judgment on all of Mr. Smith's claims. The district court denied Mr. Smith's motion for partial summary judgment and granted BP's motion for summary judgment. The district court reasoned that (1) it was an undisputed fact that BP was not Mr. Smith's employer, and so Mr. Smith could not establish an essential element of both Jones Act and maintenance and cure claims; and (2) Mr. Smith failed to establish that (a) BP owned the "jet boat" or that (b) the "jet boat's" unseaworthy condition caused his injuries—essential elements of Mr. Smith's seaworthiness claims.

Following the district court's denial of Mr. Smith's motion for partial summary judgment and its grant of BP's motion for summary judgment, Mr. Smith filed a motion to "set aside[,] vacate[,] or reconsider the final order dismissing the action." The district court treated Mr. Smith's motion as a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997). The district

5

court denied the motion and affirmed its denial of Mr. Smith's partial summary judgment and its grant of BP's motion for summary judgment. This appeal followed.

### III.

When reviewing a district court's denial of a motion to compel discovery, we apply an abuse of discretion standard. *See Holloman v. Mail-Well Corp.,* 443 F.3d 832, 837 (11th Cir. 2006). We review *de novo* a district court's grant of summary judgment, applying the same legal standards as those governing the district court. *See Sierra Club, Inc. v. Leavitt*, 488 F.3d. 904, 911 (11th Cir. 2007). We review the denial of a Rule 59 motion to alter or amend a judgment for abuse of discretion. *See Drago v. Jenne,* 453 F.3d 1301, 1305 (11th Cir. 2006).

### IV.

On appeal, Mr. Smith assigns as error the district court's (1) denial of his motions to compel discovery; (2) grant of BP's motion for summary judgment on his Jones Act and maintenance and cure claims; (3) grant of BP's motion for summary judgment on his unseaworthiness claim; and (4) denial of his motion to alter or amend the judgment. Additionally, Mr. Smith requests that this court

6

impose sanctions against BP's attorneys pursuant to 28 U.S.C. § 1927.[2] We discuss each issue in turn.

## A. Motion to Compel Discovery

Pursuant to Rule 26 of the Federal Rules of Civil procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The district court is empowered to order discovery, for good cause, on any matter relevant to the action. *Id.* Nevertheless, the district court is also permitted to "limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C).

Mr. Smith's original discovery request asked for (1) *all* contracts between BP and its contractors and subcontractors, (2) personnel files for *all* BP employees working on the oil spill response, (3) leases, subleases, and purchase agreements for *all* property used for oil spill response, (4) *all* photographs related to the Deepwater Horizon disaster, and (5) *all* interviews given by BP employees

---

[2] Mr. Smith's request for § 1927 sanctions was raised for the first time on appeal. We generally do not consider arguments raised for the first time on appeal, *see Narey v. Dean*, 32 F.3d 1521, 1526 (11th Cir. 1994), and we see no need to deviate from that practice in this case.

7

regarding the oil spill. Simply put, this request extended well beyond the scope of Mr. Smith's claims, and it was reasonable for the district court to conclude that such a request needed to be limited to relevant matters. Indeed, the district court ordered BP to produce a narrower set of documents, including (1) BP's contracts with Mr. Smith's employer for the work he performed in May of 2010; (2) documents relating to Mr. Smith's employment; (3) documents relating to any decision by BP to terminate Mr. Smith; and (4) any documents relating to any discussions with Mr. Smith's employer regarding his termination.

Because a district court is allowed "a range of choice" in such matters, we will not second-guess the district court's determination unless it reflects a "clear error of judgment." *United States v. Kelly,* 888 F.2d 732, 745 (11th Cir. 1989). In this case, we find that the burden of Mr. Smith's original production request outweighed its likely benefit, and the narrower set of documents was sufficient for resolving his claims. *See* FED. R. CIV. P. 26(b)(2)(C). Therefore, we conclude that the district court's denial of Mr. Smith's motion to compel was not an abuse of discretion.

## B. Jones Act and Maintenance and Cure Claims

Pursuant to the Jones Act, "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law . . . against the employer." 46 U.S.C. § 30104 (2006). Furthermore, "[a] seaman's right to maintenance and cure is implicit

8

in the contractual relationship between the seaman and his employer, and is designed to ensure the recovery of these individuals upon injury or sickness sustained in the service of the ship." *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979). Thus, the claimant must establish the existence of an employee-employer relationship in order to recover on either claim. *See, e.g., Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975).[3]

In this case, both parties moved for summary judgment on Mr. Smith's Jones Act and maintenance and cure claims with competing arguments regarding Mr. Smith's employment status (or lack thereof) with BP. In determining a seaman's employer, control is the critical inquiry. *See Ruiz v. Shell Oil Co.,* 413 F.2d 310, 312 (5th Cir. 1969). Control can often be shown by "(1) direct evidence that the [alleged] employer . . . exercised control over the employee; (2) evidence that the [alleged employer] was responsible for paying the employee, (3) evidence that the [alleged employer] furnished equipment necessary for performance of the works; and (4) evidence that the [alleged employer] had the right to terminate its relationship with the employee." *Langfitt v. Federal Marine Terminals, Inc.*, 647 F.3d 1116, 1123 (11th Cir. 2011).

Because employment status is an essential element to his Jones Act and maintenance and cure claims, Mr. Smith ultimately bore the burden of proving that

---

[3] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding Fifth Circuit precedent decided prior to October 1, 1981.

BP was his employer. In moving for summary judgment, he was required to produce credible, uncontroverted evidence in support of his position. S*ee United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991). Mr. Smith was unable to meet this burden.

In support of his motion for partial summary judgment, Mr. Smith relied upon a contract between BP and ORC that was executed four months *after* his accident. Nevertheless, Mr. Smith argued that this contract sufficiently established the general contractual agreements between BP and ORC at the time of his accident and, therefore, established that he was an employee of BP. Additionally, Mr. Smith submitted his own affidavit in which he asserted that he was a "seaman working on a vessel in the employ of BP" and that he was "an employee of BP in that same capacity." D.E. 102 at ¶ 2.

These documents fail to affirmatively prove that Mr. Smith was employed by BP for at least two reasons. First, the contract he submitted was not in effect at the time of his accident, and, even if it were relevant, it indicated that ORC was "an independent contractor" and BP had "no direction or control of [ORC's employees] in the performance of [their work]." *See* D.E. 98 at 4.[4] Second, Mr. Smith's affidavit was conclusory and did not provide any specific facts

---

[4] The contract between ORC and BP was filed under seal. *See* D.E. 77. We only quote from portions of the contract that have been disclosed in public filings.

establishing that he was a BP employee. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("Mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). The district court, therefore, properly denied Mr. Smith's motion for partial summary judgment.

We now turn to BP's motion for summary judgment, which argued that Mr. Smith was unable to establish (or create and issue of fact) that an employment relationship with BP existed at the time of his accident. In support of its motion, BP produced evidence showing that Mr. Smith testified that Moran was his employer, that Mr. Smith listed Marine Contracting as his employer on his 2010 Alabama tax returns, and that Mr. Smith acknowledged that he was an ORC employee in his email to ORC president, Mr. Jones. The evidence submitted by BP established that Mr. Smith was hired by Marine Contracting to work for ORC, an independent contractor of BP. Furthermore, BP established that there was no evidence that it had the ability to hire, fire, supervise, or control ORC employees. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986) (stating that, when moving party does not bear the burden of proof at trial, it may prevail by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case."). And Mr. Smith's own evidence, for the reasons we discuss, did not create an issue of fact as to whether BP was his employer. On this record, we conclude that the district court did not err in granting

11

BP's motion for summary judgment on Mr. Smith's Jones Act and maintenance and cure claims.

### C. Unseaworthiness Claim

Under general maritime law, a *shipowner* has an absolute duty to furnish a seaworthy ship. *See Caldwell v. Manhattan Tankers Corp.*, 618 F.2d 361, 363 (5th Cir. 1980) (emphasis added). Thus, a seaman who is injured by an unseaworthy condition on a ship has a right to recovery against the *owner* of the vessel beyond maintenance and cure. *See Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 544 (1960). Although the burden of proof is light, the injured seaman must prove that the unseaworthy condition was the proximate cause of the injury sustained. *Nichols v. Barwick*, 792 F.2d 1520, 1522 (11th Cir. 1986).

In its motion for summary judgment, BP argued that Mr. Smith's unseaworthiness claim failed because there was no evidence establishing that (1) BP owned the "jet boat" or (2) an unsafe condition on the boat caused his injuries. The only evidence submitted by Mr. Smith in response was an affidavit where he claimed that he "was working on the Jet boat and due to its unseaworthiness [he] fell overboard and [he] was injured." D.E. 102 at ¶ 3. Notably, however, this affidavit failed to provide specific facts identifying the boat's owner, indicating any unseaworthy condition, or explaining how the boat's condition caused his injuries. Such a conclusory statement is insufficient to survive summary judgment.

12

*See Cooper v. Southern Co.*, 390 F.3d 695, 745 (11th Cir. 2004) (holding that summary judgment was appropriate where the plaintiff relied on conclusory assertions that were based entirely on her own subjective beliefs).

Upon reviewing the record, we find that there was an absence of evidence to support Mr. Smith's unseaworthiness claim. We conclude, therefore, that the district court properly granted summary judgment in favor of BP on that claim.

## D. Motion to Alter or Amend Judgment

"The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *In re Kellogg,* 197 F.3d 1116, 1119 (11th Cir. 1999). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.,* 408 F.3d 757, 763 (11th Cir. 2005). For this reason, we only address the portion of Mr. Smith's Rule 59(e) motion that raised a new issue.[5]

In his motion, Mr. Smith objected to the district court's consideration on summary judgment of an ORC rate schedule brochure that was not produced

---

[5] Mr. Smith's Rule 59(e) motion also made an argument that BP is guilty of spoliation of evidence. *See* D.E. 116 at 2. That argument has been renewed on appeal. *See* Initial Br. at 10. But, Mr. Smith's spoliation argument could have been raised in support of his motion for partial summary judgment and/or in his response to BP's motion for summary judgment. Accordingly, we do not reach the issue of spoliation as Mr. Smith failed to timely raise the issue. *See Michael Linet, Inc.*, 408 F.3d at 763.

13

during discovery.[6] Mr. Smith also alleged that the ORC brochure did not constitute admissible evidence for purposes of summary judgment. Furthermore, he argued that BP should have produced the ORC brochure during discovery.

Based upon our review of the district court's order, we find no indication that the district court relied upon the ORC brochure in granting summary judgment. Because the brochure had no impact on its ruling, the district court did not commit a manifest error of law by requesting that BP clarify whether a contract existed at the time of Mr. Smith's accident. Furthermore, to any extent that the ORC brochure was considered, it was superfluous because there was still no available evidence establishing that an employment relationship between Mr. Smith and BP existed at the time of his accident. Accordingly, we conclude that the district court did not abuse its discretion in denying Mr. Smith's motion to alter or amend the judgment.

---

[6] On summary judgment, both BP and Mr. Smith included the ORC contract in support of their motions. Recognizing that the ORC contract was not in effect at the time of Mr. Smith's accident, the district court requested that BP clarify whether a similar contract existed at the time of Mr. Smith's accident. *See* D.E. 109. BP responded by indicating that there was no similar formal agreement in effect at the time of Mr. Smith's accident. *See* D.E. 111 at 1. BP, however, stated that ORC provided services to BP prior to execution of the ORC contract according to a standard rate schedule. *See id.* A copy of ORC's rate schedule brochure was filed separately under seal. *See id.*

14

**V**.

For the foregoing reasons, we affirm the district court's grant of BP's motion for summary judgment and its denial of Mr. Smith's motion to compel discovery, motion for partial summary judgment, and motion to alter or amend the judgment.

**AFFIRMED**.