[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11977
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-00852-TCB

MUNICIPAL COMMUNICATIONS, LLC,

Plaintiff-Appellee,

versus

COBB COUNTY, GEORGIA,
BOARD OF COMMISSIONERS OF COBB COUNTY, GEORGIA,
MEMBERS OF THE BOARD OF COMMISSIONERS OF
COBB COUNTY, GEORGIA,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 8, 2020)

Before MARTIN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Cobb County, Georgia, the Cobb County Board of Commissioners, and the members of the Board of Commissioners (collectively "the County") appeal the grant of summary judgment in favor of Municipal Communications, LLC.  This case stems from the Board's decision to grant Municipal a special land use permit to construct a telecommunications tower; the permit was granted on the condition that Municipal move the tower 300 feet east of the proposed location.  Municipal filed suit arguing that the County's decision was effectively a denial of the permit because the County's proposed site is unavailable.  Municipal also argued that the decision was not supported by substantial evidence as required by the Telecommunications Act of 1996.[1]  Conversely, the County argued that Municipal failed to prove that the new site is unavailable and that the County's decision to require relocation of the tower was supported by record evidence.  The district court granted summary judgment in favor of Municipal.  We affirm.

## I.    BACKGROUND

### A. Cobb County's Zoning Ordinance.

---

[1] As relevant to this appeal, the Telecommunications Act of 1996 provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii).

Cobb County's zoning ordinance provides that before constructing a wireless tower over 35 feet in height, a person must apply for and obtain a special land use permit. Cobb County Code § 134-273(1)-(2). The local Zoning Division may retain the services of "consultants, engineers, or other experts in the area of radio frequency engineering or other relevant fields to assist the county in analyzing the application." *Id.* § 134-273(3)(m). Then, the planning division and zoning division staff analyze the application and recommend either granting or denying the application. *Id.* § 134-122. The Cobb County Planning Commission[2] then holds a public hearing and makes a recommendation to the Board of Commissioners. *Id.* § 134-123(b). Finally, the Board of Commissioners holds a public hearing and votes on whether to grant the application. *Id.* § 134-124. The county code lists fifteen factors that the Board of Commissioners must consider when deciding whether to grant the permit. *Id.* §§ 134-37(e), 134-273.[3]

---

[2] The Planning Commission is an advisory commission that assists the governing authority (the Board of Commissioners) in administering and enforcing the Zoning and Planning Act. *See* Cobb County Code §§ 134-61, 134-64, 134-65.

[3] The fifteen factors are: "(1) Whether or not there will be a significant adverse effect on the neighborhood or area in which the proposed use will be located; (2) Whether or not the use is otherwise compatible with the neighborhood; (3) Whether or not the use proposed will result in a nuisance as defined under state law; (4) Whether or not quiet enjoyment of surrounding property will be adversely affected; (5) Whether or not property values of surrounding property will be adversely affected; (6) Whether or not adequate provisions are made for parking and traffic considerations; (7) Whether or not the site or intensity of the use is appropriate; (8) Whether or not special or unique conditions overcome the board of commissioners' general presumption that residential neighborhoods should not allow noncompatible business uses; (9) Whether or not adequate provisions are made regarding hours of operation; (10) Whether or not adequate

3

### B. Municipal's Application for a Special Land Use Permit.

On August 25, 2015, SouthernLINC Wireless, Inc. submitted an application for a special land use permit with the Zoning Division to build a cellular tower on a site that it was leasing on the property of Wildwood Baptist Church. The church was surrounded by residential properties and an elementary school. While the application was pending, SouthernLINC assigned its rights, title, and interest in the lease to Municipal, and Municipal became the applicant.

The County hired CityScape Consultants to conduct an independent evaluation of the application. At CityScape's suggestion, SouthernLINC, and later Municipal, agreed to reduce the height of the tower from 190 feet to 165 feet and to camouflage it to look like a pine tree. In its final report, CityScape concluded that Municipal's application met the relevant zoning ordinance requirements and recommended approval.

---

controls and limits are placed on commercial and business deliveries; (11) Whether or not adequate landscape plans are incorporated to ensure appropriate transition; (12) Whether or not the public health, safety, welfare or moral concerns of the surrounding neighborhood will be adversely affected; (13) Whether the application complies with any applicable specific requirements set forth in this chapter for special land use permits for particular types of uses; (14) Whether the applicant has provided sufficient information to allow a full consideration of all relevant factors; (15) In all applications for a special land use permit the burden shall be on the applicant both to produce sufficient information to allow the county fully to consider all relevant factors and to demonstrate that the proposal complies with all applicable requirements and is otherwise consistent with the policies reflected in the factors enumerated in this chapter for consideration by the county."

After Municipal amended its application to reflect the changes recommended by CityScape, the County's planning division and zoning division staff reviewed the application. The staff concluded that the application satisfied all of the applicable zoning ordinance requirements and recommended approval. However, the staff also proposed that the County attach a condition to the permit requiring Municipal to move the tower 300 to 400 feet to the east, which would place it in a thick grove of trees near the center of the property. On February 10, 2016, Municipal filed a supplement to its application informing the zoning department that the staff's proposed location was unavailable because the church would not lease the site. Municipal explained that the church would not allow the tower on that site because it would create a large area in the center of the property that could not be developed in the future. Municipal further explained that moving the tower would make it less visible for neighbors to the west, but more visible for neighbors to the east and for travelers on Wade Green Road. Municipal also explained that the move was unnecessary because the proposed site was already farther away from the nearest neighbors than many other towers the County had previously approved.

On February 2, 2016, the Planning Commission held a public meeting on Municipal's application. At the meeting, Municipal's attorney reiterated Municipal's objections: the proposed condition to move the tower 300 feet to the

5

east would not make the tower less visible and the church would not allow Municipal to move the tower.[4] She further explained that the church would not allow Municipal to move the tower because it would preclude development of that area in the future. Finally, she noted that moving the tower 300 feet would require Municipal to start the process of receiving other regulatory approvals—including approval from the Federal Communications Commission—all over again.

The expert consultant from CityScape explained at the meeting that the tower was necessary to fill a cellular service coverage gap in the area, and the County's zoning division manager explained that Municipal had satisfied all of the zoning ordinance requirements. Eighteen local residents attended the meeting in opposition to the tower, and six of those residents spoke, disputing the existence of a coverage gap and expressing general aesthetic concerns[5] and the potential for the

---

[4] Although Municipal's attorney did, early in her remarks before the Planning Commission, say, "Number one, we can, but number two, it's not going to achieve anything if we did move it," in context it is clear this was a misstatement. The attorney clarified moments later that requiring Municipal to move the tower "ensures essentially a denial of [the] application because the current property owner will not allow us to move [the tower] to that location." Then, in response to a question from the Planning Commission's chairman, the attorney explained that "one of the main reasons" for Municipal's objection to the condition is the fact that "the church has said no, emphatically no." This reading of the attorney's statements is also consistent with Municipal's written objections to the condition.

[5] The first resident to speak, C.N., stated that he represented residents of seven neighborhoods, and explained that the residents opposed the tower because "such a tower would inflict an unsightly and wholly adverse impact on the aesthetics and character of the neighborhood. . . . This is a view the residents and visitors to Cobb County will see. Welcome to Cobb County, home of the mega tree." Another resident, E.W., stated that her yard is a private, "real-world escape place to relax and enjoy the natural beauty around us. . . . This tower will be visible from our entire yard. There will be no escaping this totally unnatural towering

6

tower to impact property values negatively.  Prior to voting on the recommendation to make to the Board, one of the planning commission members posed the question "whether or not as a community you-all have looked at the staff recommendations and had any thoughts about whether or not moving it to a different location on the property would change your feelings about the request."  Resident C.N., who was the spokesperson for seven neighborhoods, stated "[w]ell without appearing to be very rigid, we don't want a tower, no way, no how between—in our seven residential neighborhood area from the Cherokee County line on Wade Green to Wooten Lake Road."  The commissioner stated that her understanding then was that the community did not want the tower anywhere on the church property, even if it was moved 300 feet to the east and was less visible, and resident C.N. confirmed that was correct.  During their deliberations, the planning commissioners acknowledged that Municipal had demonstrated the tower was needed and met all of the applicable zoning requirements.  The planning commissioner from the relevant district questioned whether moving the tower would make any difference to the tower's visibility.  Nevertheless, she moved for a vote to recommend granting the application subject to the relocation condition. The Planning Commission unanimously approved the recommendation.

---

fake pine tree."  Resident J.C., noted that "[i]t's important to protect the quality of life and the aesthetics of residential neighborhoods."

7

The Board held a hearing on Municipal's application on February 16, 2016. Twenty-eight residents attended the hearing in opposition to the application. Municipal's attorney explained the need for the tower to provide greater cell coverage in the area. She also described an appraiser's report that had been submitted to the County, which explained that the tower would not harm property values and discussed nearby towers that had not caused a reduction in property values. Municipal's attorney further explained that moving the tower would increase visibility for some neighbors and that, in any event, the church would not allow the tower to be placed on the alternative site. Two of the residents spoke in opposition to the application at the hearing. One asserted that there was no demonstrated gap in coverage and the tower was not necessary. The other resident urged that if the Board "must approve" the application that it do so with the condition that the tower be moved 300 feet to the east so that they would not "have to look at it every time we walk out of our house." Additionally, a local realtor spoke on behalf of the residents in opposition to the application and expressed a generalized concern that the tower would impact property values negatively.

The independent consultant from CityScape spoke and supported the conclusion that the tower was necessary. Specifically, he confirmed that there was a "substantial gap" in coverage in the area, and that other siting areas had been considered but were not adequate to meet the service goals. When asked whether

8

moving the tower 300 feet to the east would harm the applicant, the consultant explained he perceived no engineering or coverage issues related to moving the tower.  The consultant observed that moving the tower into more tree cover would "shield the portion of the tower that's in the trees," although a large, unshielded portion would still remain above the tree cover.  He also noted that "[i]f you're moving away from the homes 300 feet, . . . you're going to probably reduce the visibility because you're moving further away.  Of course, you're moving towards others, so . . . that's kind of more of . . . an opinion for you, [the Board] to assess."

Finally, the members of the Board spoke.  Commissioner Birrell concluded that the tower was necessary to fill a gap in coverage and that it met all zoning requirements, but she also acknowledged the general aesthetic and property value concerns that had been raised.  With respect to property values, Birrell said, the effect of cell towers on property values "is really subjective."  As an example, she noted that despite the presence of one very prominent tower in the area, homes surrounding it were still "million-dollar homes and some more."  She stated that "it does depend on, you know, the buyer, and I just—I mean, it's subjective.  And we can't really say that it definitely impacts one way or the other.  And there are cases where it does affect."  Birrell then stated that she believed moving the tower 300 feet would reduce visibility, which "would help preserve the neighborhood and address some of the aesthetic concerns that the neighbors have[.]"  Accordingly,

9

she made a motion to approve Municipal's application subject to the condition that the tower be moved 300 feet to the east. Commissioner Cupid acknowledged that the proposed tower would impact residents' views, but emphasized that it was not like traditional cell towers, and because it is to be designed to look like a tree, "it's not going to bear that same detriment in your view as you might associate with the traditional cell phone tower." Commissioner Weatherford stated that he did not see any reason to move the tower, noting that "[i]t seems to do nothing, except change a different view and closer to the road." He noted that he had approved a cell tower near his own home, and "you can barely see it, and it becomes invisible after a while." He explained he supported the tower "as it meets some of the best qualifications I've seen in my years of doing this as far as fall zone and impacting of neighbors[,] . . . but I really don't see a reason to move it 300 feet." The Board then unanimously voted to approve the application with the relocation condition. The Board did not issue any additional formal writing explaining its decision.

On March 16, 2018, Municipal filed its complaint in the district court alleging that the Board's decision was effectively a constructive denial of Municipal's application and was unsupported by substantial evidence in violation of the Telecommunications Act of 1996. The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of Municipal, concluding that the Board's approval of the permit with the condition

attached constituted a denial of the permit and was unsupported by substantial evidence.  The district court ordered the County to issue Municipal a special land use permit without the relocation condition.  The County appeals.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's order granting a motion for summary judgment and construe "all reasonable doubts about the facts in favor of the non-movant."  *Browning v. Payton*, 918 F.2d 1516, 1520 (11th Cir. 1990) (quoting *Tackitt v. Prudential Ins. Co. of Am.*, 758 F.2d 1572, 1574 (11th Cir. 1985)).  We also review *de novo* the district court's determination that the Board's decision was not supported by "substantial evidence" and apply the same standard—§ 332's "substantial evidence" standard—that the district court applied.  *Am. Tower LP v. City of Huntsville*, 295 F.3d 1203, 1207 (11th Cir. 2002).

## III.    DISCUSSION

The Telecommunications Act of 1996 "generally preserves 'the traditional authority of state and local governments to regulate the location, construction, and modification' of wireless communications facilities like cell phone towers, but imposes 'specific limitations' on that authority."  *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 300 (2015) (quoting *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005)).  One of those limitations is that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct,

11

or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Although a locality must make its reasoning available in writing, there is no specific requirement regarding the format that writing must take, and a locality can rely on a detailed hearing transcript in order to support its decision as the County did here. *T-Mobile S.*, 574 U.S. at 303.

The substantial evidence standard under 47 U.S.C. § 332(c)(7)(B)(iii) is the same as the substantial evidence standard used by courts to review agency decisions. *Michael Linet, Inc. v. Vill. Of Wellington, Fla.*, 408 F.3d 757, 762 (11th Cir. 2005). "Substantial evidence" is defined as "more than a mere scintilla but less than a preponderance." *Id.* As the party seeking to overturn the Board's decision, Municipal bears the burden of proving that the decision was not supported by substantial evidence. *Id.*

It is well-established in this Circuit that "[a] blanket aesthetic objection does not constitute substantial evidence under § 332. Such a standard would eviscerate the substantial evidence requirement and unnecessarily retard mobile phone service development." *Id.* Nevertheless, we have noted that "[a]esthetic objections coupled with evidence of an adverse impact on property values or safety concerns can constitute substantial evidence." *Michael Linet*, 408 F.3d at 762; *see also Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210, 1219 (11th Cir. 2002)

12

(explaining that "[a]esthetic concerns may be a valid basis for denial of a permit *if* substantial evidence of the visual impact of the tower is before the board").[6]  Thus, while in certain circumstances particularized aesthetic concerns may be a valid basis for the denial of an application, "[m]ere generalized concerns regarding aesthetics . . . are insufficient to create substantial evidence justifying the denial of a permit under [the Telecommunications Act]." *Preferred Sites*, 296 F.3d at 1219.

In this case, the County raises two arguments on appeal.  First, the County argues that its decision to deny the application was justified because Municipal did not meet its burden of providing sufficient information to show that the alternate site was unavailable.  Second, the County argues that the Board's decision to deny Municipal's application was supported by substantial record evidence as required by the Telecommunications Act.  We address those arguments in turn.

**A. Whether Municipal Provided Sufficient Information.**

The County argues that it was justified in denying Municipal's application because Municipal failed to meet its burden of producing sufficient information to show that the alternative site was unavailable.  Cobb County's zoning ordinance provides that "[i]n all applications for a special land use permit the burden shall be on the applicant both to produce sufficient information to allow the county fully to

---

[6] Because the case at hand concerns only those general aesthetic concerns, we do not reach the question of the extent to which particularized aesthetic objections could suffice in a different case.

13

consider all relevant factors and to demonstrate that the proposal complies with all applicable requirements and is otherwise consistent with the policies reflected in the factors enumerated in this chapter for consideration by the county." Cobb County Code § 134-37(e)(15).

The district court concluded that it is "undisputed that Municipal substantially complied with the requirements of the local zoning ordinance." However, the County did argue in its motion for summary judgment that Municipal failed to meet its burden of providing sufficient information because it did not submit documentation showing the proposed site was unavailable. Thus, we disagree that it is undisputed that Municipal "substantially complied." What is undisputed, however, is that Municipal repeatedly represented throughout the application process that the church would not lease the new location to it and it could not move the tower, and no County representative, Board Commissioner, or Planning Commission member or staff person, ever alleged, or even remotely suggested, that Municipal had failed to meet its burden of providing sufficient information in compliance with the County's zoning ordinance.[7] Indeed, the

---

[7] In fact, the CityScape consultant, the County's planning division and zoning division staff, the County's zoning division manager, the Planning Commissioners, and at least two Board members unequivocally stated that Municipal met all applicable zoning requirements. Additionally, the fact that the County did not question the representation that the cell tower could not be moved despite numerous opportunities to do so further undermines its argument. Specifically, after the planning and zoning division staff proposed moving the tower, Municipal filed a supplement to its application informing the County that the proposed location was

14

County did not articulate this reason as a basis for its decision until after the commencement of this action in the district court.[8]  The County cannot "rely on [a] rationalization[] constructed after the fact" and then cherry-pick from the record evidence that supports it.  *See Preferred Sites*, 296 F.3d at 1220 n.9 (rejecting the appellant's stated reasons for denial of an application where the "reasons . . . were not espoused prior to the commencement of [the] action," as the "[a]ppellant may not rely on rationalizations constructed after the fact to support the denial of [a]ppellee's application"); *see also T-Mobile S.*, 574 U.S. at 304 n.3 (noting that a process in which the locality could wait until a lawsuit is commenced to proffer reasons for its decision is unworkable and would "turn judicial review on its head").[9]  Accordingly, the County cannot now rely on Municipal's alleged failure

---

unavailable because the church would not lease it.  Then at the Planning Commission meeting, Municipal explained again that the church would not allow it to move the tower.  Finally, at the Board hearing, Municipal reiterated that the church would not lease the new location.  At any of these points, had the County been concerned about the veracity of Municipal's representation that it could not move the tower, the County could have requested documentation.  And even if the Board did not consider the issue until it was raised by residents at the Board meeting, it still could have at that point requested documentation.

[8] The County asserts that the record as a whole demonstrates that from the beginning the Board disputed Municipal's representation that the new location was unavailable because the church was not willing to lease it, citing statements made by residents at the Board hearing, which indicated that a lease between the church and Municipal had not been finalized.  However, the record as a whole demonstrates that, notwithstanding the residents' comments, no Commissioner ever questioned Municipal about its representation that the proposed relocation site was unavailable or even remotely suggested that Municipal needed to require proof of such.

[9] The County argues that an applicant "cannot make a naked request to construct a telecommunications tower, i.e., appear empty-handed before the zoning authority, and then complain that the zoning authority's simple 'no' answer is not supported by substantial

15

to produce evidence concerning the unavailability of the new location as a basis for its decision.

### B. Whether the County's Decision is Otherwise Supported by Substantial Evidence.

The County argues that the district court erred in its determination of whether the decision was supported by substantial evidence because the district court considered only the statements of members of the Board, instead of the record as a whole. Specifically, the County maintains that when the record is considered as a whole, substantial evidence supports the Board's decision to attach the condition that Municipal move the tower 300 feet to the east, referring to letters submitted from neighboring residents expressing aesthetic concerns, as well as concerns that the tower would decrease property values and impact the neighborhood's safety. The County correctly notes that when assessing if substantial evidence supports the Board's decision, we are required to look at the whole record, but we do so only in light of the locality's stated reasons for its decision. *Am. Tower*, 295 F.3d at 1209 n.8; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) (holding that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon

---

evidence." *AT&T Wireless PCS, Inc. v. Town of Porter*, 203 F. Supp. 2d 985, 994 (N.D. Ind. 2002). But Municipal did not appear empty-handed. It submitted an extensive application and supplemented that application with new information numerous times, including by informing the County about the unavailability of the proposed site.

which its action can be sustained"). Here, the County proffered a transcript of the minutes from the Board hearing as the reasoning for the Board's decision. The transcript reveals that the Board acknowledged in passing that numerous residents had submitted letters and expressed various concerns surrounding the tower. When explaining his or her decision, however, no Commissioner indicated that they specifically relied on those letters or concerns or specified what other record evidence they found persuasive. Rather, each Commissioner focused on the aesthetic concerns that were a focal point of the planning commission meeting and the Board hearing. Although the County urges us to consider additional evidence in the record which could have otherwise supported the Board's decision, we cannot do so.[10] Like the district court, our review, is circumscribed by the applicable standard of review. To be clear, although "[w]e look at the whole record . . . we cannot displace the Board's fair estimate of conflicting evidence and cannot freely re-weigh the evidence. We only determine whether substantial evidence exists to support the local board's decision." *Am. Tower*, 295 F.3d at 1209 n.8; *see also Preferred Sites*, 296 F.3d at 1220 n.9 (explaining that the "[a]ppellant may not rely on rationalizations constructed after the fact to support the denial of [a]ppellee's application").

---

[10] We express no opinion as to whether the record evidence not clearly relied upon by the Board would have constituted substantial evidence.

17

For the reasons that follow, the Board's decision was not supported by substantial evidence.  Commissioner Birrell stated that the tower was necessary to meet a gap in cell coverage and that Municipal met all applicable zoning requirements.  But she also noted the community's general aesthetic concerns and concerns about a possible decrease in property values.  As to the property values issue, she ultimately concluded that the Board of Commissioners could not determine one way or the other the tower's effect.[11]  Nevertheless, she stated that she believed moving the tower 300 feet would reduce visibility, which "would help preserve the neighborhood and address some of the aesthetic concerns that the neighbors have[.]"

Similarly, Commissioner Cupid stated that she "support[ed] Commissioner Birrell's analysis" and  "under[stood] the concerns of the neighbors."  However, she also noted that the proposed tower was "not the traditional cell phone tower that we typically see on the side of the interstate" and would not "bear that same detriment in your view as you might associate with the traditional cell phone tower."  Commissioner Weatherford emphatically supported the need for the

---

[11] The County disputes the district court's finding that Commissioner Birrell dismissed adverse effects on property values, arguing that Commissioner Birrell actually stated that the tower would affect property values.  However, read in context, what Commissioner Birrell said is that "there are cases where [a tower] does affect" property values but because purchasing decisions are subjective, the Board could not make a determination one way or the other as to the effect of *this* tower.

tower, but dismissed aesthetic concerns, explaining that in his experience with a similarly designed tower, "you can barely see it, and it becomes almost invisible after a while." He also unequivocally stated that he saw no "reason to move it 300 feet." In light of the Commissioner's statements, the only reasons clearly expressed by the Board that could support denying Municipal's application were generalized aesthetic concerns. While the County's local zoning laws permit it to consider aesthetic impact of the tower, we have held that blanket generalized aesthetic objections, standing alone—like those proffered here—are not enough to constitute substantial evidence under § 332. *See Preferred Sites*, 296 F.3d at 1219. Accordingly, we conclude that the Board's decision was not supported by substantial evidence.

## IV.  CONCLUSION

The judgment of the district court is **AFFIRMED**.